STATE BANK & TRUST CO. v. UNITED
STATES et al.

(Circuit Court of Appeals, Sixth Circuit.
December 9, 1926.)

No. 4586.

1. Courts ⬦�churchill342—Action by guardian of illegitimate son of deceased soldier on war risk insurance policy, in which widow and legitimate children intervened, held properly cognizable in equity.

Action by guardian of illegitimate son of deceased soldier to recover proceeds of war risk insurance policy, in which widow and legitimate children are permitted to intervene, *held* in effect a bill of interpleader, properly tried as a suit in equity.

2. Army and navy ⬦⟳51½, New, vol. 12A Key-No. Series—Rights under war risk insurance, as between illegitimate son of deceased soldier and widow and legitimate children, held determinable as other controversies between insurer and insured (War Risk Insurance Act [40 Stat. 409]).

Rights to proceeds of war risk insurance policy, as between illegitimate son of deceased soldier and widow and legitimate children, *held* determinable as any other controversy between insurer and insured, in view of War Risk Insurance Act (40 Stat. 409).

3. Army and navy ⬦⟳51½, New, vol. 12A Key-No. Series—Illegitimacy of claimant held not material on question of right to proceeds of war risk insurance, in view of father's expressed acknowledgment (War Risk Insurance Act [40 Stat. 401]).

Illegitimacy of claimant of proceeds to war risk insurance, *held* not material, in view of War Risk Insurance Act (40 Stat. 401), and father's expressed acknowledgment of claimant.

4. Bastards ⬦⟳4—Intervening widow and children held to have burden of proof that claimant of war risk insurance was not illegitimate son of insured.

In action by guardian of illegitimate son of deceased soldier to recover proceeds of war risk insurance policy, intervening widow and legitimate children *held* to have burden of proof that claimant was not son of insured, in view of insured's expressed acknowledgment.

5. Army and navy ⬦⟳51½, New, vol. 12A Key-No. Series—Costs ordinarily not awarded against United States may be allowed in action on war risk insurance policy, where bureau has fund to cover such expenses.

Costs *held* recoverable by plaintiff in action on war risk insurance policy, if properly payable out of fund maintained by Bureau of War Risk Insurance, though costs are not ordinarily awarded for or against the United States.

Appeal from the District Court of the United States for the Middle District of Tennessee; John J. Gore, Judge.

Action by the State Bank & Trust Company, as guardian for Donald Light, a minor, against the United States and the Bureau of War Risk Insurance, in which certain others intervened. From a decree for interveners, plaintiff appeals. Reversed.

Charles H. Rutherford, of Nashville, Tenn. (K. T. McConnico, of Nashville, Tenn., on the brief), for appellant.

H. B. Shofner and Norman Farrell, both of Nashville, Tenn. (A. V. McLane, U. S. Atty., of Nashville, Tenn., on the brief), for appellees.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. This suit involves the beneficial interest under a war risk insurance policy, issued on the life of Donald O. Pons, who died in France while a private soldier in the American Expeditionary Force. The policy was payable to his estate, and hence he had the right by his will, and within the permitted limits of relationship, to name the beneficiary. His will, duly probated after contest, bequeathed this insurance to "Eva Light, to be held in trust for the care and education of her son Donald J. Light, who is my son." In due course, the Bureau of War Risk accepted this child as the proper beneficiary, and began specified monthly payments to the State Bank & Trust Company, the child's duly appointed guardian. After about 10 payments had been made, it was represented to the bureau, in behalf of the widow of the deceased soldier, that this child was not in truth his son, and therefore was not entitled to receive the payments.

When the bureau declined to continue the payments, the guardian filed a bill upon the equity side of the court below, setting out the facts, and insisting that the child was the lawful beneficiary and praying a decree adjudging the liability of the government, represented by the Bureau of War Risk, to pay the remainder of this policy to the guardian, and praying also a decree for such sums as were matured and unpaid. The United States and the bureau filed an answer, stating the positions taken by both claimants to the fund, and that the bureau had concluded that this child was not the rightful beneficiary, and asking a decree that the guardian return the amounts already paid. Defendants also asked that their answer be treated as a cross-bill, so far as to entitle them to such a decree for repayment. The plaintiff answered the cross-bill, reiterating its claims. Shortly thereafter, the soldier's widow and three minor children filed in the case their petitions to intervene as claimants to this fund, so that they might file answers and have relief. Their petitions were granted, and they answered, adopting as their own

the answer which had been filed by the original defendants.

The case came on and was tried as an equity case in open court. After the judge had announced his opinion, which was in favor of the defendants and the interveners, the plaintiff moved for a rehearing, which motion was granted. Plaintiff then moved to transfer the case to the law side of the court, under the authority of Law v. U. S., 266 U. S. 494, 45 S. Ct. 175, 69 L. Ed. 401. This motion for transfer was granted. Later the court concluded that this was an error, set aside the order of transfer and the order granting a rehearing, and entered a decree in equity in accordance with the first announced opinion. The plaintiff has brought the case here by appeal, but with a record containing what is called a bill of exceptions, and which is certified to contain, in narrative form, all the evidence in the case.

[1] Appellant's first contention is that the case was really one at law, and that it was entitled to have the case remain upon the law side of the court and be tried by a jury. In this respect we think the case is controlled by Liberty Oil Co. v. Condon Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232. Whatever might have been the situation while the original bill and the answer presented only a controversy at law, the Liberty Oil Case teaches that, when the widow and children intervened and, by adopting existing answers, alleged that the funds belonged to them and then prayed general relief, the whole controversy became, in substance, a bill of interpleader. True, it lacks the customary elements that the stakeholder initiates the proceeding and is impartial; but we see no substantial difference, respecting the equitable jurisdiction, between a case where a stakeholder initiates the interpleader proceedings and one where he is at first made the defendant; indeed, the Liberty Oil Case is of the latter class. Nor does it seem to be material that the bureau did not expressly offer to pay the money into court or as the court might direct; to do so, in the existing situation, was its plain duty, and, if the pleadings had been more formal after the interveners were admitted, such a declaration by the bureau would have been most natural; its absence is an informality.

Hence we conclude that the District Judge was wrong in his first action in transferring the case to the law side, and was right in his final conclusion that the controversy was, at that stage, a suit in equity. It follows that the proceeding in this court for review was to be taken by appeal, as it was; and we find no difficulty in treating the so-called bill of exceptions, with its statement that it contained the substance of all the evidence, as fully equivalent to a narrative statement of evidence settled in an equity case under rule 75.

Upon the merits of the controversy, the case is unusual, in that the legal question as to placing the burden of proof is, in our judgment, determinative. There is an abundance of testimony on both sides, but most of it is thoroughly uncredible. Such proof as comes from apparently credible witnesses is not controlling, even if of any substantial importance on the direct issue. We interpret the opinion of the District Judge as indicating that he did not undertake to decide definitely which witnesses should be believed, but relied mainly upon the placing of the burden of proof, for he says: "I am of the opinion that the burden was upon the plaintiff to establish that fact, and it failed to do so."

Some inferences as to where the burden should be are rested upon the idea that the soldier was here attempting "to defeat his legitimate children" of something that ought not to be taken from them. This reasoning assumes that such insurance as this is property, in the ordinary sense, which would pass to children unless diverted; but in truth it is nothing which ever existed for their contingent future benefit; the taking of it by the soldier was voluntary on his part; he created it for the purpose of benefiting this plaintiff. This is not only true generally with regard to all such insurance, but the proofs here make it clear that he never would have taken this policy for the benefit of his legitimate children. To take its proceeds away from the intended beneficiary and give them to the other children is to thwart the soldier's purpose, and to compel the application of his premium payments against his will. These results may follow, because they must if the law is sufficiently clear; but there is no reason for any particular liberality in construction or in application of legal rules to accomplish them.

[2] It is also urged that the insurance was a gratuity by the government, and hence that its limitations, as indicated by the statute, should be more strictly enforced, and with the minimum of regard for the soldier's intent. This claim does not impress us as justifying any peculiar rules of construction. These policies were gratuitous only in that they exacted a smaller cash premium than was required in standard policies; but this element of gratuity may well be considered to

be compensation to the soldier, in addition to the monthly cash payments, for the services rendered and the risks incurred by him to or for the government. We are inclined to approach the controversy as we would any other between insurer and insured.

By the terms of the act (40 Stat. p. 409), and the rules and forms adopted by the bureau, the policy might have been made payable on its face for the benefit of plaintiff's ward. The will, by which the boy was so designated, was executed simultaneously with the taking of the policy. The two documents must be considered together, and we think the situation is materially the same as it would have been if the policy had been, on its face, payable to or for this particular beneficiary.

[3] In considering the burden of proof, under the facts here existing, it makes no difference that this claimant is illegitimate. The act permits a "child" to be a beneficiary, and defines "child" as including illegitimates on one of two conditions—a voluntary acknowledgment by the father or that involuntary acknowledgment flowing from a judgment for support. 40 Stat. p. 401. The existence of either of these conditions puts the child upon the same basis, for this purpose, as if legitimate; and in this case there was a complete and voluntary acknowledgment in writing.

[4] Thus we find that we have in substantial effect the question whether, when one of these policies is payable to a specified individual beneficiary purporting to be within the permitted class, a suit is brought upon the policy, and the plaintiff identifies himself as the named beneficiary, he must also initially demonstrate his relationship, or else fail to recover. We may take as an example an ordinary life policy of standard form, which is made upon its face payable to "my wife, Mary Smith." Unless she is in fact the wife of the insured, the policy is invalid because of her lack of insurable interest, just as war risk insurance would be invalid because she was not of the permitted class. In a suit on such a policy, after she established the contract and the death and her identity, we think she would be entitled to recover, unless the defendant then proved that there had been no valid marriage, and that therefore the contract of insurance was invalid. A contrasting example, in ordinary life insurance, would be a policy payable to "my children"; quite clearly one who claimed to be of the specified class could not recover until he proved his membership. We see no imperfection in the analogy between the first supposed case and the present one; the policy

and the designation make a contract to pay to one who is thereby declared to be of the permitted class. If he is not, the burden is upon the bureau or the adverse claimant to establish that defense.

The same result is reached if we consider the litigation in the aspect of a suit by the intervening claimants against the plaintiff; and this is its dominant color. The policy was apparently payable to the plaintiff. Its status as a lawful claimant had been accepted by the bureau and it was in the the possession of the benefits of the policy; the interveners seek to show that this situation should be upset; they carry the burden.

We think our conclusion consistent with what seems the right public policy upon the subject-matter. There is doubtless a public interest in having the paternity of an illegitimate child established. Where the mother and the putative father agree in the fixing of this status, and do so in a positive, public way, and the declaration is not clearly inconsistent with conceded facts, it seems conducive to the public interest that the declaration should be at first accepted, and the status be thus presumptively fixed, rather than that it should be left wholly uncertain.

[5] These considerations must lead to the reversal of the judgment and a remand of the case, with the instruction to enter a decree for the plaintiff. Between private parties this result would carry the costs of both courts. We do not award costs for or against the United States, but we understand that the bureau has a fund from which, not only the principal sum, but, in cases like this, the costs, can be properly paid, and on that understanding full costs will be awarded. If we are in error in this respect, it may be brought to our attention by special application.