## GIANAKOURAS v. UNITED STATES.

District Court, for the Northern District Ohio, W. D.   June 24, 1929.

No. 3460.

Milo J. Warner, D. L. Sears and Doyle & Lewis, all of Toledo, Ohio, for plaintiff.

The United States Attorney, for the United States.

HAHN, District Judge.   The plaintiff was a soldier in the military service of the United States in the late World War. Ultimately there was granted to him a policy of war risk insurance, a copy of which is attached to his petition. The purpose of this action is to establish his permanent and total disability as of September 27, 1927, within the meaning of his policy. Upon his becoming permanently and totally disabled, the policy provides for the payment to the plaintiff of the sum of $10,000, payable in equal monthly installments of $57.50 each. Counsel for the plaintiff and for the United

States have agreed upon a stipulation of facts, which establishes the total and permanent disability of the plaintiff as of the date suggested, and counsel for the United States concede that the plaintiff is entitled to a judgment based upon total and permanent disability, but deny that he is entitled to interest on unpaid instalments which should have been paid as of September 27, 1927, and monthly thereafter, and also deny that he is entitled to a judgment for costs in this action.

(a) Counsel for the government rely upon the case of United States v. Lyke, 19 F. (2d) 876 (C. C. A. 9), holding that no interest is recoverable against the United States on deferred payments of monthly installments of soldiers' insurance. Counsel for the plaintiff cites the case of Jackson v. United States (D. C.) 24 F.(2d) 981, which case distinguishes the Lyke Case, supra, and comes to a contrary conclusion. We have been unable to find any later case discussing the question of the right to interest in the kind of case which we have before us. Because of the conflict in the above decisions, we have, with the assistance of industrious counsel, given more than usual study to the question involved. Its solution requires a determination of whether or not the case of Standard Oil Co. v. United States, 267 U. S. 76, 45 S. Ct. 211, 69 L. Ed. 519, is controlling. The latter case involved a policy of marine insurance issued by the government, and interest was allowed in a suit thereon.

A history of the acts involved we think leads to a solution of the question. The marine insurance policy which was involved in Standard Oil Co. v. United States, supra, was issued under the Act of September 2, 1914, c. 293, 38 Stat. 711, 712. From the preamble of this act it appears that the foreign commerce of the United States was greatly impeded and endangered through the absence of adequate facilities for the insurance of American vessels and their cargoes against the risks of war. Accordingly a Bureau of War Risk Insurance was established. The act was expected to be temporary in its nature, and the President was authorized to suspend the operations of the act when, in his judgment, there was no further necessity for war insurance by the United States (section 9). This act was entitled "An act to authorize the establishment of a Bureau of War Risk Insurance in the Treasury Department."

By the Act of August 11, 1916, c. 332, 39 Stat. 514, and the further Act of March 3, 1917, c. 169, 39 Stat. 1131, the time during which the President might suspend the operation of the act was extended. By the Act of June 12, 1917, c. 26, 40 Stat. 102, 105, the above acts were amended, and the Bureau of War Risk Insurance was placed upon an apparently permanent basis. The insurance was extended, not only to vessels, but also to the masters, officers, crews of such vessels, and to their personal effects (section 2).

The United States having entered the World War on April 6, 1917, Congress was importuned to pass a further act providing for insurance for commissioned officers and enlisted men, etc. By the Act of October 6, 1917, c. 105, 40 Stat. 398, Congress provided for term insurance for such officers and enlisted men, etc., and the act contemplated the conversion of such term insurance after the termination of the war. Section 404, p. 410. This act, under which soldiers' insurance originated, was entitled "An act to amend an act entitled 'An act to authorize the establishment of a bureau of War Risk Insurance in the Treasury Department,' approved September 2, 1914, and for other purposes." Thus it will be seen that soldiers' insurance originated as an outgrowth of, and through an amendment to, an act which provided for marine insurance, a policy of which was under discussion in Standard Oil Co. v. United States, supra.

The policy involved in this action, as appears by paragraph 21 thereof, was granted under and subject to the provisions of the World War Veterans Act of 1924, and amendments and supplements thereto (38 USCA § 421 et seq.). This act was passed June 7, 1924 (43 Stat. 607, c. 320), and is entitled "An act to consolidate, codify, revise and reenact the laws affecting the establishment of the United States Veterans Bureau and the administration of the War Risk Insurance Act, as amended, and the Vocational Rehabilitation Act, as amended." This act provides for the conversion of term insurance, to which we have already alluded (section 301, 43 Stat. p. 624 [38 USCA § 512]). It appears, therefore, that the policy on which suit is brought here was issued under an act which resulted from the amendment, consolidation, codification, revision, and re-enactment of the various laws relating to the War Risk Insurance Act, and the policy involved in Standard Oil Co. v. United States, supra, was issued under the latter act.

Further, the policy involved in Standard Oil Co. v. United States, supra, and the policy involved in this action, were issued in accordance with almost identical statutory enabling provisions. The marine insurance policy involved in Standard Oil Co. v. United States, supra, was issued, as we have seen, in accordance with 38 Stat. 711. Section 3 of

that act provided for the issuance of a form of war risk insurance policy, without going into the details as to the form of such policy. Section 4 provided for the enactment of rules and regulations. Section 5 provided that suit might be brought in the event there was a disagreement between the United States and the assured.

The analogous provisions in the act under which the policy sued on in this action was issued (43 Stat. 607) follow. Section 301 of the act provides for "usual forms of insurance," and refers to the policy as a "contract of insurance" (now 38 USCA § 512). Section 5 of the act provides for the making of rules and regulations (now 38 USCA § 426). Section 19 of the act authorizes suit to be brought "in the event of disagreement as to claim under a contract of insurance between the bureau and any" beneficiary or beneficiaries thereunder (now 38 USCA § 445). In neither instance did Congress go into minute particularity as to the terms and provisions of the policies to be issued.

In the circumstances it seems to us it would be unreasonable and absurd (Interstate Drainage & Investment Co. v. Board of Commissioners, 158 F. 270 [C. C. A. 8]) to say that the intention of Congress, as to whether or not interest might be recovered in a suit, was different as to a marine policy on a vessel and a policy issued practically under the same act for the benefit of a soldier, and we believe the decision in Standard Oil Co. v. United States, supra, is controlling. What was said in that decision is applicable here. It is:

"When the United States went into the insurance business, issued policies in familiar form and provided that, in case of disagreement, it might be sued, it must be assumed to have accepted the ordinary incidents of suits in such business."

It seems that, if Congress had authorized the governmental authorities to organize and operate a bank, without expressly providing that it might pay interest in the course of the business of the bank, there would be no doubt that it was the legislative intent to authorize the payment of interest as an incident of such business. Where Congress authorized the governmental authorities to enter into the insurance business, as it did by the foregoing acts, the implication as to the payment of interest seems to us must be the same, and it must apply with at least the same force to a policy of marine insurance ·and a soldier's policy. The implication might be stronger in the latter case, because we must assume that it was the intention of Congress to place all soldiers upon an equality as to the payment of monthly installments provided by its policies. The payment of monthly installments when due is of the greatest moment to the soldier. We cannot think that Congress intended that, where suit was necessary because of disagreement and the monthly installments withheld, the soldier should be denied interest which, even if allowed, is often an inadequate compensation for delay.

We think the general rule that no interest may be recovered on a claim against the United States (Boston Sand & Gravel Co. v. United States, 49 S. Ct. 52, 73 L. Ed. ——, decided November 19, 1928) must yield to the plain implication of the act under which the policy in suit was granted. Standard Oil Co. v. United States, supra. The contrary view is supposed to be supported by a quotation from White v. United States, 270 U. S. 175, 180, 46 S. Ct. 274, 275, 70 L. Ed. 530, at page 538, where Mr. Justice Holmes said:

"The insurance was a contract, to be sure, for which a premium was paid, but it was not one entered into by the United States for gain. All soldiers were given a right to it, and the relation of the government to them if not paternal, was at least avuncular. It was a relation of benevolence established by the government at considerable cost to itself for the soldier's good. It was a new experiment in which changes might be found necessary, or at least, as in this case, feasible more exactly to carry out his will."

Emphasis is placed upon the statement that the relation between the government and the policy holder is one of "benevolence." However, the act under which the policy was granted stresses the fact that it is a contract; and, further, no reason appears why the benevolence of the government should end with the payment of the principal, to the exclusion of interest on monthly installments erroneously withheld.

Under the provisions of the act under which the policy here in suit was issued, the governmental authorities were given very broad powers as to the form, terms, and provisions of the policies to be issued, and it seems to us that in issuing such policies they must have had in mind the payment of interest on deferred monthly installments. The payment and nonpayment of interest must have been in the minds of the governmental authorities, for the policy contains many provisions which deal with the matter of interest. Without going into detail, we find at least 10 instances in which this policy deals with the matter of interest, and the phrase "without interest" is used at least five times.

There is no provision in the policy that monthly installments, the payment of which is withheld because of the necessity of bringing suit, shall not bear interest, and, under familiar rules of construction of contracts, it must follow that such deferred monthly installments should bear interest. This conclusion is strengthened by the fact that the policy here in suit was issued almost two years after the decision in Standard Oil Co. v. United States, supra, and, under the act, the governmental authorities had continuing power and authority to change the terms and provisions of the policies to be issued.

Accordingly, we are of the opinion, and hold, that the plaintiff is entitled to interest on deferred payments due at the rate of 6 per centum per annum.

▆ (b) The matter of the right to a judgment for court costs in this kind of case has been decided by our own Circuit Court of Appeals in State Bank & Trust Co. v. United States, 16 F.(2d) 439, 441, certiorari denied Pons v. State Bank & Trust Co., 274 U. S. 737, 47 S. Ct. 575, 71 L. Ed. 1317. What is said there is applicable here:

"We do not award costs for or against the United States, but we understand that the bureau has a fund from which, not only the principal sum, but, in cases like this, the costs, can be properly paid, and on that understanding full costs will be awarded. If we are in error in this respect, it may be brought to our attention by special application."

Doubtless counsel for the plaintiff and the government can stipulate the necessary facts as to such a fund. If they cannot, plaintiff's counsel, if they desire, may make the application, suggested above, to the court.