## STANDARD. OIL COMPANY OF NEW JERSEY, AS OWNER, ETC., OF THE STEAMSHIP LLAMA, *v.* THE UNITED STATES OF AMERICA.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 169. Argued January 14, 1925.—Decided February 2, 1925.

1. A vessel insured by the United States against " takings at sea, arrests, restraints and detainments of all kings, princes, and peoples," etc., " and all consequences of hostilities or war-like operations," was stopped by a British war ship and boarded by a British naval officer with armed men; her navigation was resumed by her master, but under the general control of the officer; she struck a rock and was lost. *Held* that the proximate cause was the seizure and paramount control (insured against), and not the marine peril. P. 77.

2. When the United States goes into the business of insurance (Act of Sept. 2, 1914, c. 293, § 5,) issues policies in familiar form and provides that, in case of disagreement, it may be sued, it must be assumed to have accepted the ordinary incidents of suits in such business, including the payment of interest. P. 79.

291 Fed. 1, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals reversing a decree of the District Court awarded against the United States, as respondent, in a libel on two war risk insurance policies, issued under the War Risk Insurance Act of September 2, 1914.

*Mr. Cletus Keating,* with whom *Mr. John M. Woolsey* was on the brief, for petitioner.

· *Mr. J. Frank Staley,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* and *Mr. Albert Ottinger,* Assistant Attorney General, were on the brief, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a libel upon two policies of insurance issued by the Government insuring respectively the steamship Llama and her freight and advances against war risks.

Act of September 2, 1914, c. 293, § 5; 38 Stat. 711, 712. The libellant recovered in the District Court, but the decision was reversed by the Circuit Court of Appeals. 291 Fed. 1. A writ of certiorari was granted by this Court. 263 U. S. 694.

The risks assumed by the insurer in the two policies included "takings at sea, arrests, restraints and detainments of all kings, princes, and peoples, of what nation, condition or quality soever, and all consequences of hostilities or war-like operations, whether before or after declaration of war." The loss happened as follows. On October 14, 1915, the Llama sailed from New York for Copenhagen with a cargo of oil, routed via Kirkwall that her papers might be examined. On October 29 she was stopped by the British warship Virginia and was boarded by a lieutenant and four men, all armed, and her papers examined. The result was signalled to the Virginia and the lieutenant directed to proceed to Kirkwall, which was 400 miles to the east on the farther side of the Orkneys, keeping to the northward of Scule Skerry and North Rona and not to pass between the islands at night. The steamer arrived off Westray Firth, one passage between the islands, on the night of October 30. The next morning it started on a course through Westray Firth but in a few hours struck a rock and was totally lost.

In defense it is argued that the proximate cause was a marine peril not covered by the policies and that the decision should be governed by *Morgan* v. *United States*, 14 Wall. 531; *Queen Insurance Co.* v. *Globe & Rutgers Fire Ins. Co.*, 263 U. S. 487, and other similar cases. But in those very strict applications of a well-known rule, however strong the motives of the insured or owners for acting as they did, the loss ensued upon their own conduct. But if a vessel should be taken from an owner's hands without his consent and should be lost while thus held by a paramount power, obviously a company that had insured

against such a taking could not look beyond and attribute the loss to a peril of the sea. Whatever happens while the taking insured against continues fairly may be attributed to the taking. That is a nonconductor between the insured and subsequent events. See *Muller* v. *Globe & Rutgers Fire Ins. Co.,* 246 Fed. 759, 763. *Cory* v. *Burr,* 8 App. Cas. 393, 398. *Andersen v. Marten,* [1908] A. C. 334.

The Llama at the time of the accident was under the paramount control and in the possession of the Virginia. We regard the differences between the testimony of the British officer and that of the master of the Llama as immaterial. The master, who was believed in the District Court, makes the intervention of the British lieutenant frequent, active, and the cause of a change of the course that the ship otherwise would have taken. But whether the intervention was more or less, if by mutual understanding, after a manifestation of armed force, the last word was with the lieutenant, it does not matter whether he uttered his commands often or rarely. The lieutenant while denying that he had a general charge of the navigation testifies again and again to facts that show that he assumed and was recognized to be the ultimate power. After his signalling his ship the master, he says, asked him if he could proceed " So I said, ' Yes.' " He looked at the course to see that it complied with the orders from his captain. " The captain approached me and asked my permission to go through the Westray Firth . . . I gave my consent." If the captain had suggested a course that the lieutenant did not approve, the latter said he assumed that he had power to correct it. He recognized that the vessel might possibly be the subject of prize court proceedings. Some comment was made upon the meagreness of the entries in the log as to any control of the master's conduct. But after an entry ' British naval officer boarded ship with prize crew' nothing more was necessary to show what the master understood his position

to be, whether in fact the crew was a prize crew or not. As was said of similar facts in *Muller* v. *Globe & Rutgers Fire Ins. Co.,* 246 Fed. 759, 762, that the vessel and her cargo were seized, arrested and detained within the meaning of the policy we think too plain to require much more than mention. It no more mattered that the master took an active part in the navigation than that the ship still was steered by one of the crew.

As the vessel had passed out of the owner's control before the accident by a seizure within the policy and as the loss happened while the vessel thus was held by an adverse hand, it follows that the libellant must prevail.

Some question was made as to the allowance of interest. When the United States went into the insurance business, issued policies in familiar form and provided that in case of disagreement it might be sued, it must be assumed to have accepted the ordinary incidents of suits in such business. The policies promised that claims would be paid within thirty days after complete proofs of interest and loss had been filed with the Bureau of War Risk Insurance. The proofs seem to have been filed on January 11, 1917. Interest at six per cent should be allowed from February 11, 1917. The decree of the District Court will be corrected so as to allow for total loss of the Llama...................................... $115,000.00
    With interest at six per cent. from February 11, 1917.
Total loss of the freight, &c...............    44,686.82
    With interest at six per cent. from February 11, 1917.
Expenses incurred under sue and labor clauses ...............................    2,270.34
    With interest at six per cent. from February 11, 1917.
    Thus modified the decree will be affirmed.

       *Decree of Circuit Court of Appeals reversed.*
       *Decree of District Court modified and affirmed.*

MR. JUSTICE McREYNOLDS is of opinion that the decree of the Circuit Court of Appeals should be affirmed.

MR. JUSTICE SUTHERLAND took no part in the decision.