## DENNEHY v. UNITED STATES.

(District Court, S. D. New York. August 2, 1926.)

**1. Army and navy ⊜51½, New, vol. 12A Key-Series—Death of seaman held not due to a "risk of war," within terms of policy of war risk insurance.**

The United States issued a blanket war risk policy, insuring officers and crew of a steamer "against loss of life and personal injury * * * by the risks of war." The vessel reached a French port with a cargo of motor oil for the French government after the Armistice, but before official termination of the war. While awaiting a berth to unload, oil, which had collected on the surface of the water near, took fire, and in the excitement libelant's intestate and other seamen jumped overboard, and he was drowned. *Held*, that liability on the policy depended on the proximate cause of death; that in this case it was the burning oil, which was not a "risk of war," within its terms.

[Ed. Note.—For other definitions, see Words and Phrases, War Risk.]

**2. Army and navy ⊜51½, New vol. 12A Key-No. Series—To come within policy insuring against death from "risks of war," death must have been due to the war.**

To come within a policy insuring against death from "risks of war," the proximate cause of death must have been due to the war.

In Admiralty. Suit by James Dennehy, Special Administrator of the Estate of William Dennehy, deceased, against the United States. Libel dismissed.

John J. Hanrahan and Arthur H. Haaren, both of New York City, for libelant.

Emory R. Buckner, U. S. Atty., and Samuel C. Coleman, Asst. U. S. Atty., both of New York City.

GODDARD, District Judge. [1] This suit is brought by the administrator of the estate of William Dennehy to recover under a policy of insurance issued pursuant to the provisions of the "War Risk Insurance Act of June 12, 1917," and the acts amendatory thereof (Comp. St. § 514a et seq.). The deceased was a seaman on the steamship Texaco, owned by the Texas Company and under charter to the republic of France. Her

cargo of motor naptha oil had been shipped by the French High Commission to be used for military purposes by the French government. She sailed from New Orleans, La., on December 12, 1918, and on January 12, 1919, arrived and anchored off Pauillac Roads, France, awaiting a berth at an adjacent port for unloading. During the afternoon of her arrival, oil, which had collected on the surface of the water near her, caught fire, and although her master succeeded in maneuvering the Texaco out of the fire area, several members of her crew, including the libelant's intestate, jumped overboard during the excitement which prevailed. Although efforts were made to rescue them, William Dennehy was lost. The damage to the ship itself was slight.

The United States, through the Bureau of War Risk Insurance of the Treasury Department, had issued a blanket policy covering the officers and crew of the Texaco, which was in force at the time Dennehy lost his life. The clause of the policy defining the risk covered is as follows: "Against loss of life and personal injury to the master, officers, and crew by the risks of war. * * * "

[2] The Armistice had been signed on November 11, 1918, but the Treaty of Peace had not yet been signed. Officially the war was not over. The mere fact that in time of war a member of the crew of a merchant vessel, carrying munitions of war, is injured or loses his life and has a policy covering him against "war risks," does not entitle him or his representatives to recover against the one so insuring, is clear even though a very broad construction be adopted. Injury or death must be the result of a risk of war. The war must be the proximate cause. The question is whether the proximate cause of Dennehy's death was due to a war risk or to some other risk. The determination of liability is " * * * a quest for proximate cause." Hough, J., in Queen Ins. Co. v. Globe & Rutgers Ins. Co. (D. C.) 278 F. 778. The proximate cause of Dennehy's death was the fire from the burning oil on the water. How the oil got there or became ignited does not appear. Certain it is that this is a danger or risk that exists or may exist in some harbors in war or peace time. Casualties caused by the burning of oil which has escaped upon the surface of harbor waters have occurred before and since the war. War was not the proximate cause of William Dennehy's death.

In Morgan v. United States, 81 U. S. (14 Wall.) 531, 20 L. Ed. 738, during the Civil War, Morgan had chartered his vessel to the United States. The charter provided that the United States assumed the war risks and the owners the marine risks. The vessel, after receiving on board troops and stores at Brazos St. Iago, Tex., was to proceed to New Orleans, La. The master and pilot advised against them attempting to leave the harbor, because of weather and tide conditions, but was ordered by the government quartermaster to do so. While attempting to pass over a bar, the vessel stranded and was damaged. The court stated in its opinion (81 U. S. [14 Wall.] at page 535 [20 L. Ed. 738]): "That the high wind and low stage of water were the efficient agents in producing this disaster are too plain for controversy. They were the proximate causes of it, and in obedience to the rule 'causa proxima non remota spectatur' we cannot proceed further in order to find out whether the fact of war did not create the exigency which compelled the employment of the vessel"—and held that the damage was not a war risk.

In the case of Queen Insurance Co. v. Globe & Rutgers Insurance Co., 263 U. S. 487, 44 S. Ct. 175, 68 L. Ed. 402, the steamship Napoli had sailed from New York for Genoa with a part of her cargo intended for use by the Italian government in the prosecution of the war, and all of her cargo was contraband. When she reached Gibraltar, she joined a convoy, although not ordered to do so by the naval or military authorities. The convoy proceeded without lights, protected by American, British, and Italian war vessels, and was under the command of a British naval officer. During the night, a vessel in another similar convoy collided with the Napoli and sank her. In determining whether the loss was due to a war risk covered by one insurance company, or to a marine risk covered by another insurance company, Mr. Justice Holmes, in the opinion of the court which held that it was not a war risk, said (263 U. S. at page 492, 44 S. Ct. 176 [68 L. Ed. 402]): "On the other hand, the common understanding is that in construing these policies we are not to take broad views, but generally are to stop our inquiries with the cause nearest to the loss. This is a settled rule of construction. * * * ".

The facts in this case differ from those in the cases of Standard Oil Co. v. United States, 267 U. S. 76, 45 S. Ct. 211, 69 L. Ed. 519, and Muller v. Globe & Rutgers Fire Insurance Co., 246 F. 759, 159 C. C. A. 61, for in those instances the vessel had either

been seized by or the master compelled to turn over the control of his vessel with the direction of her navigation to British naval officers, and while under such control the vessel was injured.

The libel is dismissed, without costs.