## STERNFELD v. UNITED STATES.

District Court, N. D. New York. May 21, 1929.

Zabriskie, Sage, Gray & Todd, of New York City (Franklin F. Russell, of New York City, of counsel), for plaintiff.

Oliver D. Burden, U. S. Atty., of Syracuse, N. Y. (B. Fitch Tompkins, Asst. U. S. Atty., of Syracuse, N. Y., and Randolph C. Shaw, counsel for Veterans' Bureau, of Washington, D. C., of counsel), for the United States.

BRYANT, District Judge. Plaintiff is the beneficiary under a $10,000 policy of war risk insurance issued to plaintiff's son, Milton. The policy was dated August 31, 1918. Milton was honorably discharged from the army January 31, 1919, and continued his policy in force by paying the monthly premiums up to and including the month of October, 1919. Under the regulations then in existence the insurance remained effective by such payments until November 30, 1919, the end of the grace period allowed the insured. He next paid a premium for one month on December 23, 1919. It does not appear whether he inclosed a health statement with his December premium payment. In

view of later events, the probabilities are that he did not. The Bureau accepted this payment as a payment of the December premium, crediting the insured's account with the payment for that month, and continued his insurance in effect until January 31, 1920. On February 1, 1920, Milton was in default a second time. On March 10, 1920, he mailed the Bureau his check for an amount sufficient to pay four monthly premiums, that is, an amount more than sufficient to reinstate his insurance. At that time he was admittedly in perfect health. Admittedly, he failed to state in forwarding his check to defendant what the condition of his health was. The regulations required him to submit a statement that he was in as good health as at the expiration of the grace period. On the evening of March 11, 1920, he was accidentally killed by a blow struck in a boxing bout in which he was then engaged. March 16, 1920, the insured's uncle notified the Bureau of Milton's death and inquired about payment of the insurance. Eleven days later, March 27th, the Bureau deposited the insured's check of March 10th in its general account with the Treasury of the United States, and five days after that, April 1, 1920, 21 days after the check was mailed, the Bureau sent a letter to insured stating that his remittance of March 10th was being held "pending receipt of the inclosed application blank for reinstatement properly filled in." The letter also contained a suspense receipt, a receipt showing the check was received and held awaiting the health statement. On June 11, 1920, the Bureau rejected the claim of plaintiff for payment and has since refused to pay said claim. This action is brought to recover under said policy.

The sole question in the case relates to the validity of the attempted reinstatement of the policy. The insurance had lapsed and the insured did not comply with the regulations in force at the time which required him to submit a statement that he was in as good health as at the expiration of the grace period. The plaintiff seeks recovery upon two theories: (1) That the requirements of the regulation were waived and the Government is estopped from relying upon noncompliance; and (2) that the insured substantially complied with the conditions contained in his contract.

■ Much force might be given the assertion of waiver and estoppel if made in connection with a policy issued by a private insurance company. But when authorities of direct application to war risk insurance are considered, the contention fails. The

principle of law that estoppel will not lie against the United States and that the government is not responsible for the laches, unauthorized, or wrongful acts of its officers or servants is so elementary and well established that citations of authority do not seem necessary. Plaintiff seeks to avoid the application of this rule by asserting that the government has entered the field of insurance business and is bound by all the rules of law usually applicable to such business. Standard Oil Co. v. U. S., 267 U. S. 76, 45 S. Ct. 211, 69 L. Ed. 519, is cited and quoted in support of this theory. This case, however, has not been followed as an authority governing war risk insurance. Birmingham v. U. S. (C. C. A.) 4 F.(2d) 508; U. S. v. Lyke (C. C. A.) 19 F.(2d) 876; U. S. v. Loveland (C. C. A.) 25 F.(2d) 447.

■ Justice Holmes, who rendered the opinion in the Standard Oil Case, in a later opinion (White v. United States, 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530) seems to exempt war risk insurance contracts from the business field. The decision in Bean v. U. S. (D. C.) 7 F.(2d) 393, to the effect that "war risk insurance is a special statutory kind of insurance, and contracts issued thereunder are not to be interpreted and construed according to the principles of law governing accident insurance, or other contracts of insurance," seems to have been strictly followed. The above cases and numerous others show the unanimity of the courts in holding that war risk insurance is a contract made in pursuance of federal statute and must be construed with reference to such statute, the regulations promulgated thereunder, and the decisions applicable thereto, rather than by laws and decisions governing private companies. In other words, what the power of agents of insurance companies may be to bind their companies is a question of no present moment. The question here is the power of agents of the United States to place liability upon it by unauthorized acts of omission or commission. They had no such authority, and it must therefore be held that the acts of the officers and agents in connection with this matter do not constitute waiver or estoppel against the government.

■ The regulation, in question, provides that the lapsed insurance can be reinstated if the insured is in as good health as at the expiration of the grace period and so states in his application. Admittedly, he failed to make the required statement. This regulation has the force of law. Cassarello v. U. S. (D. C.) 271 F. 486; Claffy v. Forbes (D. C.) 280 F. 233; Covey v. U. S. (D. C.) 263

F. 768–775. This provision of the regulation is specific and is susceptible of no misinterpretation. It is a condition precedent to the reinstatement of the policy. And, inasmuch as the officers or agents having charge of the insurance could not waive this provision, it must be held that tender of check without statement was not a compliance or substantial compliance with the requirements.

The circumstances are most unfortunate, and it is with regret that the court finds itself compelled to hold that, under the facts in this case and law governing the same, the government is not liable on the certificate.