## UNITED STATES FIRE INS. CO. OF NEW YORK v. WOOTEN.

### No. 3615.

*Circuit Court of Appeals, Fourth Circuit.*
*June 11, 1934.*

Julius C. Smith, of Greensboro, N. C., and Alva M. Lumpkin, of Columbia, S. C. (Smith, Wharton & Hudgins, of Greensboro, N. C., and Thomas, Lumpkin & Cain, of Columbia, S. C., on the brief), for appellant.

C. T. Graydon and Edward W. Mullins, both of Columbia, S. C. (Nelson & Mullins, of Columbia, S. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a suit in equity brought in the court of common pleas for Richland county,

S. C., by the appellee (herein referred to as the plaintiff) and removed by the appellant (herein referred to as the defendant) to the District Court of the United States for the Eastern District of South Carolina. After the taking of evidence by a special referee, the court below made a detailed finding of facts and gave his conclusions of law, granting the plaintiff the relief prayed for and giving judgment against the defendant in the sum of $11,000, with interest from the 17th day of February, 1931, from which action this appeal was brought.

The plaintiff is a citizen of the state of South Carolina, and a resident of Columbia, in the Eastern District of said state. The defendant is a corporation created under the laws of the state of New York and a citizen of that state. The defendant issued three fire insurance policies, one for $5,000 on March 19, 1930, one for $4,000 on April 23, 1930, and one for $2,000 on August 29, 1930, covering a hotel building (including furniture and fixtures) in Hendersonville, N. C., known as the Terrace Hotel. The said policies were written in the name of the Vircar Realty Corporation, the owner of the property at the time of the issuance of the policies, and each policy contained a standard mortgage clause in favor of the Virginia Trust Company as first mortgagee, G. H. Ballentine, trustee for E. B. Wooten, as second mortgagee, and E. W. Eubanks and G. E. Shipman, trustees, as third mortgagees.

All of the said policies contained the usual terms and conditions of the standard form of policy in force in the state of North Carolina. The said policies of insurance provide, among other things, as follows: "This entire policy shall be void, unless otherwise provided by agreement in writing hereto, (a) if the interest of the insured be other than unconditional and sole ownership; or (b) if the subject of insurance be a building on ground not owned by the insured in fee simple; or (c) if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property insured hereunder by reason of any mortgage or trust deed; or (d) if any change other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard); or (e) if this policy be assigned before a loss."

The said policies also provide: "Waiver. No one shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the sub-

ject of agreement added hereto, nor shall any such provision or condition be held to be waived unless such waiver shall be in writing added hereto, nor shall any provision or condition of this policy, or any forfeiture, be held to be waived by any requirement, act or proceeding on the part of this Company relating to appraisal or to any examination herein provided for; nor shall any privilege or permission affecting the insurance hereunder exist or be claimed by the insured unless granted herein or by rider added hereto."

About May, 1930, the Vircar Realty Company notified E. B. Wooten (who formerly owned the property) that they would not be responsible for any renewals of insurance, or any other charges against the property.

Some time about the 1st of July, 1930, the Vircar Realty Company offered to deed the property in question to E. B. Wooten or his wife, Prudie H. Wooten (the plaintiff herein), which fact was communicated to the defendant's agent, Morrow, by Vircar Realty Company and by Morrow to one Colquitt, a special agent for the defendant company. It developed, however, that there were certain judgments and other liens outstanding against the Vircar Realty Company, and for this reason Wooten and his wife were advised not to accept a deed to the property.

After the Vircar Realty Company had advised the Wootens that they were willing to deed the property back to them, and, after the Vircar Realty Company knew that the Wootens might not be in position to take a deed on account of the outstanding liens against the property, the Vircar Realty Company wrote a letter on July 25, 1930, to Morrow, as agent for the defendant company, advising him in effect that they had no further interest in the property, and authorized and empowered him to do any and all things necessary to make the proper transfer of the insurance to Wooten or his wife when the transfer of the title to the property to them, or either of them, had been completed.

About September, 1930, a proceeding was brought to foreclose the deed of trust held by Ballentine as trustee for E. B. Wooten. Morrow, the agent of the defendant at Hendersonville, N. C., was fully advised of these foreclosure proceedings and advised Colquitt, the special agent of the defendant, of the foreclosure proceedings and the fact that the title to the property would eventually vest in either Wooten or his wife.

On November 20, 1930, a sale of the property was made under the deed of trust. It appears that Prudie H. Wooten had furnish-

ed the money to pay some installments due on the mortgage to Virginia Trust Company, and also to pay past-due taxes and other charges against the property. At this sale the property was bid in by Prudie H. Wooten, and the title to the same was made to her.

Under the law of North Carolina, a ten-day period had to elapse before the actual deed could be made to Prudie H. Wooten, the purchaser at the foreclosure sale.

The deed was delivered to Wooten (for his wife) on December 4, 1930, and was carried by him to the office of Morrow, the agent, who handed it back to him to be recorded, and it was subsequently, on the same day, redelivered by Wooten to Morrow after the same had been properly recorded.

On the same day that the deed was delivered to Morrow, that is, on December 4, 1930, Wooten requested Morrow to transfer the insurance policies then existing on the hotel property (including the policies involved in this suit) to the plaintiff, Prudie H. Wooten, as she had then acquired title to the property. Morrow assured him that the policies would be transferred to Prudie H. Wooten and everything would be done that was necessary to protect her. All of the interested parties, that is to say, the Wootens, the Vircar Realty Company, and Morrow, the defendant's agent, contemplated that the insurance would be transferred to the Wootens as soon as the title to the property passed to them, or either of them.

On December 5, 1930, Wooten called on Morrow at his office and requested him to prepare an itemized statement showing the amount of premiums due on the policies covering the hotel property. At this time, after some discussion, it was decided between Morrow and Wooten that $10,000 of the insurance then carried on the hotel would be dropped, leaving the insurance in force amounting to approximately $70,000, including the policies involved in this suit.

During the summer of the year 1930 certain moneys, being the proceeds of rents derived from the property, came into the hands of Morrow, and he applied the same to the payment of certain insurance premiums and other charges against the property, including two of the policies here in question. The remaining policy was listed, among others, on the bill rendered by Morrow to Wooten, for Prudie H. Wooten, on December 6, 1930, and Wooten paid this bill out of money furnished by Prudie H. Wooten; the amount of the bill being approximately $1,350. When this bill was paid, the defendant company had received all the premiums due on all three policies here involved.

When Wooten paid Morrow the bill for insurance premiums, he asked Morrow if he (Morrow) had made the necessary indorsements on the policies to transfer the ownership to Prudie H. Wooten, the plaintiff herein, and he was assured by Morrow that this had been done, and that in fact everything had been done that was necessary to transfer the insurance to Mrs. Wooten, and that Mrs. Wooten was fully covered. Wooten, as the agent for the plaintiff, Prudie H. Wooten, relied upon these statements and representations made by the defendant's agent, and returned to his home in Columbia, S. C., in the belief that the property of his wife, the plaintiff herein, was covered by the three policies of the defendant company above mentioned.

During the time that Wooten was negotiating with Morrow for the transfer of the policies to his wife (and in fact ever since the policies had been issued), they were in the possession of the Virginia Trust Company at Richmond, Va., which company held a first mortgage covering the insured property. When Wooten requested that the policies be transferred to his wife, Morrow intended to make out a rider or indorsement consenting to the transfer of ownership to Mrs. Wooten. The usual practice in Morrow's office was, where the policies were held by a mortgagee, such as the Virginia Trust Company, to mail the original of the indorsement to the mortgagee to be attached to the policy, a copy to the company's principal office in North Carolina, which was located at Durham, N. C., and a copy would be retained by the local agency, and in no event were the Wootens to receive a copy of the indorsement. At the time Wooten requested the change to be made, the papers were put on the desk of one Staten, an employee of Morrow, for the purpose of making the necessary transfer or indorsement, and, when Morrow advised Wooten that the proper indorsements for change of ownership to Mrs. Wooten had been made, he thought that the same had been done. Just about this time Morrow's offices were moved, and in the confusion incident to moving both he and Staten overlooked the fact that the indorsements had not been mailed out, and the error was not discovered until after the fire on December 17, 1930.

J. C. Morrow Agency had full power and authority to consent on behalf of the defendant company to a transfer of ownership by written indorsement, and the said agency of the defendant agreed with plaintiff's agent to

transfer by proper written indorsement the policies of insurance from the Vircar Realty Company to Prudie H. Wooten. The only reason that the indorsements were not made in the customary manner was entirely through an oversight and mistake on the part of the said agency, and this mistake was not discovered until after the fire.

Where a policy was in the possession of a mortgagee, such as the Virginia Trust Company, it was not Morrow's custom to furnish the owner of the property with a copy of the consent of the insurance company to a transfer of the ownership, and, when he agreed to effect the transfer of the policies to the plaintiff, he did not intend to mail a copy of the indorsement to the plaintiff or her agent, nor did they expect to receive such a copy. Wooten, as agent for the plaintiff, did everything that a person in his circumstances could reasonably have been expected to do, and he had the right to rely on the assurance of the agent that the transfer of the insurance to Mrs. Wooten had been effected.

The property covered by said insurance policies was totally destroyed by fire on December 17, 1930. The plaintiff herein filed with the defendant due proof of loss.

The defendant denied liability before suit was brought, and continues to deny liability. At the hearing before the lower court, no contention was made that the plaintiff was not entitled to recover the full amount of each policy, if the company was liable at all. Its defense went to the question of liability, not the amount of loss. The court found that the actual value of the property in question at the time of the fire was $100,000.

A full discussion of the principles governing the questions here presented will be found in an able decision by Judge Groner speaking for this court, in Hutchings et al. v. Caledonian Insurance Company, 35 F.(2d) 309. In the Hutchings Case will be found a review of the authorities, and we reached the conclusion that a mutual mistake of the insured and agent for the insurer in believing that the insurance policy had been transferred, in accordance with request therefor, warranted reformation, in order to show true intent and meaning of parties, after loss occurred.

In Great American Insurance Company v. Johnson et al., 25 F.(2d) 847, in an opinion by Judge Parker, this court held that issuance and delivery of a fire insurance policy, insuring in the name of wrong owners pursuant to erroneous information, was the result of a mutual mistake, and entitled owner, **in equity,** to reformation of policy and decree enforcing it as reformed.

A study of the facts in the instant case bring it squarely within the doctrine laid down by these two decisions of this court. The insurance agent was selected by the defendant company, and held out to the public as its agent having authority to represent it. The defendant company vouched to the public for the reliability of its agent, and it is admitted that, had the agent done what he agreed to do and what he said he had done, and what in fact he thought had been done by an employee in his office, the defendant company, in the absence of immediate notice of cancellation, would have been responsible for the loss; in addition to this, another agent of the defendant, a special agent with supervisory authority over local agents, was given, in advance, information as to the proposed transfer of title and insurance, and Morrow testified that the agent approved of the course intended to be pursued. Had there been no foreclosure before the fire, the husband of the plaintiff would have benefited by the payment of the loss under the standard mortgage clause.

The plaintiff, acting through her husband as agent, did everything that an ordinarily prudent person could or would have done under the circumstances. The policies of insurance upon which the indorsements were to be made were not in the possession of the plaintiff, but were in the possession of the mortgagee, and a sending of the promised indorsements to the holders of the policies would have bound the company. This the agent of the company said he would do, and, upon later inquiry, said he had done, and there was nothing more the agent of the plaintiff could do. Certainly the equities are all with the plaintiff.

Attorneys for the defendant rely upon the decision of this court in Surratt et al. v. Fire Ass'n of Philadelphia et al., 43 F.(2d) 467, 470, but that case is easily distinguished, as there the agreement was, in the language of the court: " * * * Not to make the indorsement forthwith, but only after the deal should be consummated; and there was no agreement whatever to transfer the insurance to Mrs. Surratt, who was the owner of the property when the fire occurred."

Here the agreement was to make the indorsements forthwith and was to transfer the insurance to the plaintiff.

It is contended on behalf of the defendant that the court below erred in allowing interest on the judgment before the date of the

decree reforming the policy, but we are of the opinion that the action of the court was correct.

" 'When necessary in order to arrive at fair compensation, the court in the exercise of a sound discretion may include interest or its equivalent as an element of damages.' Miller v. Robertson, 266 U. S. 243, 257–259, 45 S. Ct. 73, 78, 69 L. Ed. 265,.275, and cases cited. See, also, Standard Oil Co. v. United States, 267 U. S. 76, 79, 45 S. Ct. 211, 69 L. Ed. 519, 521; Bernhard v. Rochester German Ins. Co., 79 Conn. 388, 397, 65 A. 134, 8 Ann. Cas. 298. Under the facts disclosed by the record, the principles established by these decisions fully justified the allowance of interest made by the district court in this case." Concordia Ins. Co. v. School District, 282 U. S. 545, 51 S. Ct. 275, 278, 75 L. Ed. 528.

The decree of the Court below is accordingly affirmed.