PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 20 2000
THOMAS K. KAHN
CLERK

_____

Nos. 98-7015 & 99-10305

_____

D. C. Docket No. 96-1117-CV-1-CB-C

ALEX W. NEWTON,

                                        Plaintiff-Appellee,

versus

CAPITAL ASSURANCE COMPANY, INC.,

                                        Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Alabama

_____

**(April 20, 2000)**


Before ANDERSON, Chief Judge, COX and HULL, Circuit Judges.

COX, Circuit Judge:

Capital Assurance Company, Inc. appeals the award of prejudgment interest in

an insurance contract action based on a federally-subsidized Standard Flood

Insurance Policy it issued under Part B of the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4041, 4071-4129 (1994 & Supp. II 1996) (NFIA). We address, for the first time in this circuit, whether a district court violates sovereign immunity principles by awarding prejudgment interest against a so-called "Write-Your-Own" company empowered to issue flood insurance by the Federal Emergency Management Agency. We hold that it does not.

## I. Background

Alex W. Newton (Newton) owns a vacation home on the Gulf of Mexico in Orange Beach, Alabama. Capital Assurance Company, Inc. (Capital) sold Newton a federally-subsidized Standard Flood Insurance Policy (SFIP) covering the property. The Federal Emergency Management Agency (FEMA) utilizes "Write-Your-Own" (WYO) companies like Capital to aid it in its statutory duty to administer the National Flood Insurance Program (NFIP). *See* 42 U.S.C. § 4081(a) (permitting FEMA's Director to enter into arrangements with private insurance companies in order to make use of their "facilities and services"); 44 C.F.R. § 62.23(a)-(d) (establishing the WYO program to permit private insurers to sell and administer SFIPs). In 1995 Newton's

home suffered extensive flood damage from Hurricane Opal, and Newton filed a claim.[1]

After Capital denied a portion of Newton's claim, Newton sued in an Alabama state court. The defendants removed the case to the United States District Court for the Southern District of Alabama, asserting original jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 4053. Following a bench trial, the court awarded Newton compensatory damages, prejudgment interest, and costs. Capital appeals only the award of prejudgment interest.[2]

## II. Subject-Matter Jurisdiction

Although neither party has challenged the subject-matter jurisdiction of the federal courts over this suit, we are compelled to address the question sua sponte, *see, e.g.*, *University of South Ala. v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999), because both the record and answers we received to questions posed at oral argument evidence some confusion on the issue. In the district court, Newton at first filed a motion to remand for lack of federal-question jurisdiction. Capital opposed the motion, again asserting jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 4053.

---

[1] In April of 1997, TIG Premier Insurance Company assumed all obligations, liabilities, and rights of Capital in SFIPs issued by Capital.

[2] Capital noticed appeal of the award of costs as well, but at oral argument the parties stipulated to settlement of the costs issue.

For reasons unclear from the record, Newton later conceded federal-question jurisdiction. We now clarify that the district court had federal question jurisdiction under 28 U.S.C. § 1331.

There are three statutes that potentially affect federal-question jurisdiction in this case: the general "arising under" jurisdiction provision of 28 U.S.C. § 1331 and two provisions of the NFIA, 42 U.S.C. § 4053 and 42 U.S.C. § 4072. We begin by dispensing with § 4053; Capital's reliance on that section was misplaced. Under 42 U.S.C. § 4041, the Director of FEMA may implement the NFIP using one of two different institutional structures, each of which specifies a different role for private insurance companies. The first scheme, described in 42 U.S.C. §§ 4051-4056, includes a provision for suing private insurers, § 4053. The NFIP is, however, not currently implemented under that scheme. It is instead implemented under the alternative structure set forth in 42 U.S.C. §§ 4071-4072. *See Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 165 (3d Cir. 1998). It is thus clear from the statute and the current implementation of the program that § 4053 does not apply to this suit.

We next turn to 28 U.S.C. § 1331. Under that section, federal courts have federal-question jurisdiction over suits "in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *See*

4

*Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 2856 (1983). While the federal cause of action or question of federal law must be apparent from the face of the well-pleaded complaint and not from a defense or anticipated defense, *see Franchise Tax Bd.*, 463 U.S. at 9-11, 103 S. Ct. at 2846-47, it need not be statutory; federal common law will suffice, *see National Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845, 850, 105 S. Ct. 2447, 2451 (1985). Here, the complaint alleged, among other things, breach of an SFIP contract. SFIP contracts are interpreted using principles of federal common law rather than state contract law. *See, e.g., Carneiro da Cunha v. Standard Fire Ins. Co./Aetna Flood Ins. Program*, 129 F.3d 581, 584 (11th Cir. 1997) ("'As contracts, the standard policies issued under the Program are governed by federal law, applying "standard insurance law principles."'" (quoting *Wright v. Director, Fed. Emergency Management Agency*, 913 F.2d 1566, 1570 (11th Cir. 1990))). Thus a complaint alleging breach of an SFIP satisfies § 1331 by raising a substantial federal question on its face.

This leaves us only to question whether 42 U.S.C. § 4072, the provision for suits against FEMA under the NFIP as currently implemented, affects our jurisdiction. On its face, § 4072 provides only for suits against FEMA. It does not discuss the WYO program, and we therefore do not read it as addressing suits against WYO companies. It does not, therefore, abrogate § 1331 jurisdiction. *See Carneiro da*

5

*Cunha*, 129 F.3d at 586-87 (implicitly recognizing federal subject-matter jurisdiction over a suit against a WYO company after the implementation of § 4072). We need not consider the opposite question: whether it provides an additional basis for jurisdiction against WYO companies, *see Van Holt*, 163 F.3d at 165-66 (finding WYO companies subject to jurisdiction under § 4072 (as well as § 1331) because a suit against a WYO company is the "functional equivalent" of a suit against FEMA), because our conclusion regarding jurisdiction under § 1331 is sufficient to answer the jurisdictional question we raise.

## III. The No-Interest Rule

The issue Capital presents in this appeal is whether prejudgment interest awards in suits against WYO companies selling federally-subsidized SFIP contracts violate the "no-interest rule"–the sovereign immunity principle that "[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." *Library of Congress v. Shaw*, 478 U.S. 310, 314, 106 S. Ct. 2957, 2961 (1986). Although suits against WYO companies are not suits against the federal government, Capital nevertheless contends that prejudgment interest awards against WYO companies always violate the no-interest rule because such awards constitute–as a legal conclusion derived from the NFIA and its implementing regulations–"direct charge[s]

6

on the public treasury." *In re Estate of Lee*, 812 F.2d 253, 256 (5th Cir. 1987). Newton, on the other hand, argues that the controlling laws give the government no more than a "financial stake" in the payment of prejudgment interest by WYO companies, which is, as the district court held, insufficient by itself to invoke the no-interest rule in a given case. *West v. Harris*, 573 F.2d 873, 882 (5th Cir. 1978).[3] We review the question de novo, *see Powers v. United States*, 996 F.2d 1121, 1123 (11th Cir. 1993), and hold that the no-interest rule does not prohibit awards of prejudgment interest against WYO companies.

We start our analysis by recognizing that those circuits considering the question have, for important reasons, found the no-interest rule to bar awards of interest in suits directly against FEMA. *See Sandia Oil Co. v. Beckton*, 889 F.2d 258, 263 (10th Cir. 1989) (holding, on reasoning equally applicable to awards of prejudgment interest, that postjudgment interest may not be awarded in suits directly against FEMA); *Lee*, 812 F.2d at 256. To begin with, the cases note that nothing in the NFIA indicates a Congressional waiver of immunity from interest awards. *See Lee*, 812 F.2d at 256; *see also Sandia Oil*, 889 F.2d at 262 (citing *Lee*). Nor, as one court has further concluded, does the NFIP produce a profit for the federal government against which

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th. Cir. 1981), this court adopted as binding precedent the decisions of the Fifth Circuit prior to the establishment of the Eleventh Circuit.

interest awards may sometimes be appropriate because the government's role resembles that of a profit-making, private entity. The NFIP is a subsidy program.[4] The holdings of our sister circuits are consistent with the Supreme Court's articulation of the no-interest rule. *See Shaw*, 478 U.S. at 314-17, 106 S. Ct. at 2961-63. Moreover, Newton concedes that both *Lee* and *Sandia Oil* were correctly decided. We use their conclusions as a starting point and examine the relationship between FEMA and WYO companies to determine whether the no-interest rule bars prejudgment interest awards against WYO companies as well.

Capital urges us to accept a dictum from the Fifth Circuit that any award of prejudgment interest against a flood insurer is "a direct charge on the public treasury" indistinguishable from identical awards in suits against FEMA itself and thus precluded by the no-interest rule. *Lee*, 812 F.2d at 256 (making the statement in the context of a suit directly against FEMA). *Cf. Gowland v. Aetna*, 143 F.3d 951, 954-55

---

[4]     On this point, the Tenth Circuit has found an exception to the no-interest rule for engagement in profitable "'commercial enterprise'" inapplicable. *Sandia Oil*, 889 F.2d at 261 (quoting *Shaw*, 478 U.S. at 317 & n.5, 106 S. Ct. at 2963 & n.5). The court compared the holdings in the controlling cases, *United States v. Worley*, 281 U.S. 339, 50 S. Ct. 291 (1930) and *Standard Oil Co. v. United States*, 267 U.S. 76, 45 S. Ct. 211 (1925), both of which dealt with coverage disputes over insurance sponsored and sold by the United States government. It noted that *Worley*, in which prejudgment interest was barred, distinguished *Standard Oil*, in which prejudgment interest was allowed, because the government insurance program addressed in *Standard Oil* was profitable while the program considered in *Worley* was not. *See id.* at 262-63 (citing *Worley*, 281 U.S. at 343, 50 S. Ct. at 293). Because the federal government subsidizes rather than profits from the NFIP, the Tenth Circuit reasoned that the commercial enterprise exception cannot apply to the NFIP. *See id.* at 263-64.

(5th Cir. 1998) (referring to *Lee*'s "direct charge" language and prohibiting application of the doctrine of equitable estoppel against a WYO company because the doctrine could not be applied against the federal government). To even entertain this idea, we must accept the proposition that the no-interest rule can ever apply to shield private entities from interest awards. We can accept this proposition in the abstract because we recognize that Congress should be able to implement federal programs using private entities rather than government agencies without necessarily waiving protection of program funds under the no-interest rule. We also recognize, however, that the rule as applied to private entities should be a narrow one applicable only when the interest charge really is, for all relevant purposes, directly against the federal government. To conclude otherwise would allow private entities to use the no-interest rule to protect their purely private concerns rather than public programs. This is why, as *West* holds, "a financial stake in . . . [the flood insurance] program is not sufficient to cloak . . . [a] defendant [insurance company] with the robe of sovereign immunity from any awards of interest." *West*, 573 F.2d at 882.

Even under this narrow view, however, Capital contends that the no-interest rule protects it from the award in this case because the regulations detailing the financial relationship between FEMA and WYO companies establish that interest charges against WYO companies are (in all instances) direct charges against FEMA.

We cannot agree. Capital begins by noting that, although WYO companies initially collect premiums from which they must pay claims (including those ordered paid only as a result of litigation), and refunds, *see* 44 C.F.R. pt. 62, app. A, arts. II(e), III(D)(1)-(2), III(E), the amount of the collected premiums actually controlled by and immediately available to the WYO companies is severely curtailed by the regulations. Premiums received must be kept in separate accounts, *see* app. A, art. II(E), and all funds not required to meet current expenditures must be remitted to FEMA, *see* app. A, art. VII(B). If the funds retained by the WYO company are not enough to satisfy outstanding claims and refunds, the WYO companies must draw upon letters of credit from FEMA rather than retaining additional funds. *See* app. A, art. IV(A).

Capital also points out the limited and, as they might characterize it, functionary status of the WYO companies in comparison to FEMA. Under the statute, WYO companies act as the "fiscal agents of the United States," 42 U.S.C. § 4071(a)(1); *see also* 44 C.F.R. § 62.23(f) (characterizing the relationship between the federal government and WYO companies as "one of a fiduciary nature" and intended to "assure that any taxpayer funds are accounted for and appropriately expended"). Furthermore, WYO companies may not alter the terms of SFIPs. *See* 44 C.F.R. § 62.23(c). Capital's observations about the financial and operational ties between FEMA and the WYO companies do demonstrate a close relationship between FEMA

10

and the WYO companies; indeed, on its own, nearly-identical observations, the Third Circuit has held that, for the purposes of a jurisdictional question, suits against WYO companies are the "functional equivalent[s]" of suits against FEMA. *See Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 165 (3d Cir. 1998) (concluding that a suit against a WYO company is the functional equivalent of a suit against FEMA for the purposes of 42 U.S.C. § 4072 (as discussed in Part II of this opinion)).

Nevertheless, we do not concur with Capital's conclusion that the no-interest bar recognized in suits against FEMA extends to suits against WYO companies. First, the regulations amply demonstrate that the role accorded WYO companies is more than that of mere functionary. WYO companies may issue policies in their own names (as Capital issued Newton's) rather than in that of FEMA or the United States, *see* 44 C.F.R. § 61.13(f), and they may use their own, individual "customary business practices", § 62.23(a); *see also* § 62.23(e). For example, a WYO company may accept an application previously rejected by another WYO company. *See* § 62.23(h)(5). Similarly, WYO companies adjust claims in accordance with their own "general [c]ompany standards," although they must seek guidance from "NFIP [c]laims manuals." § 62.23(i)(1). Finally, the regulations expressly deny that WYO companies are general agents of the government; the companies are thus "responsible

11

for their obligations to their insureds under any flood insurance policies issued." § 62.23(g).

More important than the role assigned to WYO companies by the regulations is our conclusion that the regulations simply do not make prejudgment interest awards direct charges on the government, as Capital would have us believe. WYO companies, rather than FEMA, are initially responsible for the "adjustment, *settlement*, *payment* and *defense*" of claims on the policies they sell. § 62.23(d) (emphasis added). Thus, a WYO company choosing to defend against a claim must seek reimbursement for its costs rather than merely handing the case over to FEMA. *See* § 62.23(i)(6) ("[D]efense costs will be part of the . . . claim expense allowance . . . .").

And the reimbursement scheme, in turn, does not unequivocally require prejudgment interest awards to be paid from federal coffers rather than from those of the WYO company. If reimbursed at all, prejudgment interest awards would be treated as "loss payments" under the regulations. 44 C.F.R. pt. 62, app. A, art. III(D)(2) ("Loss payments include payments as a result of litigation . . . ."). Such payments are made from the financial resources available to the WYO company as depicted above: first from the limited funds available in the segregated accounts containing retained premium portions and then using letters of credit from FEMA.

12

*See* pt. 62, app. A, art. III(D) (1). FEMA subsequently reimburses loss payments according to their placement in one of three categories. "Unallocated loss adjustment" expenses are reimbursed at a flat rate of 3.3% of the "incurred loss," pt. 62, app. A, art. III(C)(1); "[a]llocated loss adjustment" expenses are reimbursed according to a "Fee Schedule" negotiated between FEMA and the individual company, pt. 62, app. A, art. III(C)(2); and "[s]pecial allocated loss expenses" are reimbursed in accordance with FEMA "guidelines," pt. 62, app. A, art. III(C)(3).

We are uncertain about which category prejudgment interest belongs in. The key point, however, is that reimbursement is not automatic under any of these categories; it may be limited if a WYO company fails to meet certain documentation requirements, *see* pt. 62, app. A, art. III(D)(2), or is responsible for "delay[s], error[s], or omission[s]" leading to "claims against the company, the NFIP, or other related entities," pt. 62, app. A, art. IX; *see also* pt. 62, app. A, art. III(D)(2). Moreover, FEMA adjudicates these substantive limitations through a full course of administrative procedure. WYO companies must initiate the reimbursement process by providing "[p]rompt notice" of "claim[s] in litigation" followed up by "an initial case analysis and legal fee estimate." Pt. 62, app. A, art. III(D)(3). FEMA's Associate General Counsel for Litigation (OGC) reviews all notices of litigation claims to ensure that the claims are not caused by company actions "outside the scope" of the FEMA-WYO

13

company arrangement and do not otherwise involve negligence by the insurer or its agents. Pt. 62, app. A, art. III(D)(4). The Director of FEMA may deny reimbursement upon recommendation by the OGC. *See* pt. 62, app. A, art. (III)(D)(4). If the Director denies reimbursement, WYO companies may seek a final administrative appeal to the "WYO Standards Committee" which makes its own recommendation to the Director. Pt. 62, app. A, art. III(D)(4).

Finally, we note that WYO companies are private commercial enterprises. Common sense therefore dictates, and the regulations reflect, that they must be afforded a profit margin for their participation in the NFIP, even though the program is not profitable to the federal government. *See* 44 C.F.R. § 62.6 (a)(1) (providing a basic sales commission of 15% for the first $2000 of premiums and 5% thereafter); 44 C.F.R. pt. 62, app. A, art. III(B) (permitting WYO companies to retain a percentage of premiums for operating and administrative expenses, including an extra percentage for the attainment of certain marketing goals). It may be, in light of the substantive and procedural limitations that the regulations place on loss-payment reimbursement, that the prejudgment interest award against Capital will come out of its profit margin rather than the federal coffers. As Newton notes, Capital has presented no evidence to the contrary.

In summary, the role of the WYO companies in selling SFIPs and handling claims, together with the substantive and procedural limitations on reimbursement and the profit potential afforded WYO companies, lead us to conclude that the relationship is – despite tight financial controls on WYO companies and their obvious role as "fiscal agents" of the federal government – not one in which prejudgment interest awards against WYO companies are direct charges on the public treasury forbidden by the no-interest rule. At most, the statute and regulations show that FEMA has a significant financial stake in litigation against WYO companies and may in the end reimburse WYO companies for either all or part of prejudgment interest awards.

Capital does not persuade us otherwise by pointing to changes in the flood insurance program over time. Capital observes that *West v. Harris*, 573 F.2d 873 (5th Cir. 1978), this circuit's only case upholding a prejudgment interest award against a private company selling federal flood insurance, was decided at a time when the structure of the NFIP involved a more attenuated relationship between private insurance companies selling flood insurance and the federal agency running the NFIP. True, the "Industry Program With Federal Financial Assistance" at issue in *West*, 42 U.S.C. subch. II, pt. A, involved a pool of private insurers selling flood insurance under an agreement between the pool as an entity (rather than individual insurers) and the government (then represented by the Department of Housing and Urban

Development (HUD)). *See* 42 U.S.C. §§ 4051-4052. HUD provided only reinsurance coverage when necessary and payments to the pool to make up for the issuance of insurance at less-than-actuarial rates. *See* §§ 4054-4055. The insurance companies were, under explicit statutory provisions, exclusively responsible for adjusting claims, paying claims, and defending suits arising from disallowed claims, *see* § 4053. *See also Van Holt*, 163 F.3d at 165; *Berger v. Pierce*, 933 F.2d 393, 394-95 (6th Cir. 1991) (both recounting the history of the NFIP).

In contrast, as Capital notes, today's NFIP is termed a "Government Program With Industry Assistance." 42 U.S.C. subch. II, pt. B. It explicitly provides a cause of action only against FEMA, *see* 42 U.S.C. § 4072; *cf. supra* Part II (addressing subject-matter jurisdiction of suits against WYO companies), and, as the foregoing discussion of the regulatory structure demonstrates, both permits private insurers far less financial independence and requires interaction between FEMA and the insurers with regard to individual claims.

Nevertheless, we agree with the district court's conclusion that *West* still controls this case. The dispositive question remains whether the no-interest rule is being invoked to prevent a direct charge on the federal treasury. At the time of *West*, the question's answer may have been a more certain no. But, Capital has not shown the answer to be different in suits against WYO companies implementing the current

NFIP. We conclude that the no-interest rule does not preclude the award of prejudgment interest in this case.

AFFIRMED.