## UNITED STATES v. LOVELAND et al.

Circuit Court of Appeals, Third Circuit.
February 27, 1928.

No. 3713.

1. **Army and navy ⬳51½—United States cannot be estopped by acts or omissions of officers or agents representing it in handling war risk insurance.**

The United States, by entering the life insurance field through enactment of the War Risk Insurance Acts, did not subject itself to estoppel by acts or omissions of its officers or agents in carrying out the acts, and to which they would have no power to subject it in any other sphere of government activity.

2. **Army and navy ⬳51½—United States held not estopped to deny liability on war risk insurance policy.**

The United States *held* not estopped to deny validity of a war risk insurance certificate which under its terms had lapsed for nonpayment of premiums because the assistant director of the Bureau neglected to promptly answer letters from insured asking for information about converting his insurance, and stating that on receiving such information he would remit the premiums due.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action at law by John Winthrop Loveland, executor of the estate of Florence Lee Loveland, deceased, and others, against the United States. Judgment for plaintiffs, and defendant brings error. Reversed.

For opinion below, see 18 F.(2d) 585.

Walter G. Winne, U. S. Atty., of Hackensack, N. J., Randolph C. Shaw, of Washington, D. C., and James S. Turp, of Trenton, N. J., for the United States.

Waldron M. Ward, of Newark, N. J. (John R. Hardin, Jr., of Newark, N. J., of counsel), for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, a judgment was entered in favor of the legal representatives of John Winthrop Loveland, Jr., against the government for war risk term insurance on the life of the decedent. By stipulation, a jury was waived, and the case tried by a judge. The question involved is whether there was any evidence upon which a judgment could be rendered against the government. The case falls within a narrow limit. Capt. Loveland entered the military service of the United States May 15, 1917. While so serving, he applied for and was granted war risk term insurance of $10,000. On this he paid premiums by noting monthly deductions from his pay vouchers. He was discharged July 1, 1919, and on that day forwarded $6.70 to the Bureau, which was credited as payment for the month of July, 1919. The certificate provided: "Subject to the payment of the premiums required, this insurance is granted under the authority of an act amending 'an act entitled "An act to authorize the establishment of a Bureau of War Risk Insurance in the Treasury Department," approved September 2, 1914, and for other purposes,' approved October 6, 1917, and subject in all respects to the provisions of such act, of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the act, shall constitute the contract." Bulletin No. 1 provided: "Premiums shall be paid monthly on or before the last day of each calendar month. * * * If any premium be not paid, either in cash or by deductions as herein provided, when due or within the days of grace, this insurance shall immediately terminate, but may be reinstated within six months upon compliance with the terms and conditions specified in the regulations of the Bureau." Capt. Loveland made no further payment of the premiums, and died October 29, 1919. The court below, in its opinion, held that, in view of the subsequent correspondence between him and the Bureau and of its omission to reply to certain letters and inquiries, "Capt. Loveland undoubtedly believed that his insurance was still in effect, and the conduct of the Bureau was such as to reasonably lead any reasonable man to the same conclusion. Since a private insurance company would be estopped from asserting to the contrary, the Bureau of War Risk Insurance is by the same principle estopped."

[1, 2] We note the fact here that the certificate and bulletin provided for monthly payment of premiums, and termination by reason

of nonpayment of such agreed-on monthly payments. The alleged estoppel of government to forfeit for nonpayment of such monthly installment is based on these facts. When remitting his last payment, Capt. Loveland, on July 1, 1919, wrote the Bureau requesting "complete information regarding the conversion of this insurance into straight life, endowment, or any other form of insurance which the government is going to handle." This was not answered until August 29, 1919, when he received a letter from the assistant director under date of August 4th which transmitted a pamphlet regarding conversion, a sample policy issuable in conversion, and concluded with the words, "Please do not hesitate to write me again." On receipt of this letter, Capt. Loveland wrote the assistant director as follows:

"Dear Sir: Your letter of August 4, 1919, in reply to my request for information concerning the conversion, has just reached me. In reply I would ask that you inform me as to whether or not I can continue my term insurance, at the rates prevailing during the war, for the next few months until I get settled in business, and then convert it into a permanent form of insurance. Also that you advise me as to whom these payments are made and the amount of the monthly premium for ages 28 and 29.

"My premiums were paid up to include June 30, 1919, and have not been paid for July and August as I was waiting for your reply to my request for information.

"The original amount of my insurance was $10,000, and I wish to carry this whole amount at the term insurance rates for the present and later convert all or part of it into permanent insurance.

"Upon your reply stating the amount due to carry my insurance at term rates for $10,-000 and the amount due you for the July and August premiums, I will be pleased to mail you a check for that amount.

"Hoping for a reply at your earliest convenience, I am

"Yours very truly,
"John W. Loveland, Jr.,
Late Capt. C. A. C."

"Dear Sir: In reply to your letter, I am glad to fill out the following form in addition to filling out the application for conversion:

"My full name is John Winthrop Loveland, Jr.

"The number of my insurance certificate is ⸺.

"My rank and organization at the time of applying for insurance was 2d Lieut., 12th Field Artillery.

"The date of my discharge was June 30th, 1919.

"The original amount of my insurance was $10,000.

"The amount of unconverted insurance I am going to carry in addition to above is $10,000.

"The last month for which I paid my term insurance was June, 1919.

"Besides this, I would like to say that (see attached letter).

"John W. Loveland, Jr.,
Late Capt. C. A. C."

No reply was made by the Bureau thereto, nor did Capt. Loveland make further inquiries or pay any premiums. Did this situation estop the government from contesting liability under the policy, or, if not, did it have the effect of continuing the policy in force without payment of the monthly premiums for the insurance of July, August, and September?

In the final analysis the act of omission by which the government is estopped, if at all, is the failure of the government's employees to reply to the letter of August 29th. We shall not quote the many authorities denying such effect to the omission of an officer of the government, but refer to them as collected in 22 Cyc. 1664C, where the concensus of them is thus stated. "The government is not responsible for the laches or wrongful act of its officers. It may be the loser by their negligence, but it never becomes bound to others for the consequences of such neglect, unless it be by express agreement to that effect." We have not overlooked the contention that the government, by entering into the insurance field and consenting to be sued, is thereby put in the same position as a contesting insurance company. But such conclusion does not follow. What the power of agents of insurance companies may be to bind their companies is a question of no present moment. The question here involved is the power of servants of the United States to place liability upon it by an act of omission when they would be powerless so to do by an act of commission. The decisions holding that a servant of the government has, in the absence of statutory warrant and duty, no such power, are too firmly settled and so providently wise as to forbid our holding that, when the government broadened its field of operation to new fields, it thereby broadened the power of those it employed in such new fields to the extent of allowing them, by acts of neglect or omission, to commit the government to liabilities in such field which they had no power to do in other spheres of government ac-

tivity. Seeing then that what the government's officials did not do did not estop it from contesting liability, we find nothing the government did do by its correspondence which continued its liability by keeping its policy in force without payment of premiums. While Capt. Loveland was seeking data in aiding him to determine his future course, the simple fact is that he saw fit to omit paying his monthly premium during the interim.

While we regret very greatly to enforce the unfortunate consequence therefrom following, we see no escape from our holding that under the law the government is not liable on this certificate, and the court below erred in entering judgment for the plaintiff.