## WILLINGHAM v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.*

## EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. WILLINGHAM.

### No. 8220.

Circuit Court of Appeals, Fifth Circuit.

Nov. 4, 1936.

B. P. Gambrell and Reuben R. Arnold, both of Atlanta, Ga., for appellant and cross-appellee.

Robert S. Sams, of Atlanta, Ga., for appellee and cross-appellant.

*Rehearing denied Dec. 11, 1936.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant is the widow of Harold S. Willingham, deceased. As beneficiary of a life insurance policy for the principal sum of $15,000 issued to him by appellee, she brought this suit upon it as a death claim. The defense was lapse for nonpayment of premium. To meet this defense appellant put forward three contentions: (1) Payment by applying under the policy terms for and directing the application of the available loan value to pay it; (2) waiver of default by the appellee and estoppel to claim it, evidenced by granting extensions of time to pay the premium and requests for its payment, continuing up to within a few days of death; (3) that the provisions for "Options on Surrender or Lapse" kept the insurance in force for 3 months after default.

Appellant met the first contention, payment, with the insistence that the loan available for premium payment was insufficient to discharge it. Answering the second contention, that it had waived, or had become estopped to claim, default, it pointed out that the extensions of time it had given had been in writing and upon specific terms, and that, after the deceased had defaulted and his policy had lapsed, he had applied in writing for restoration, "which, if granted, is not to take effect until the premiums, if any, with interest, where required, have been fully paid during my good health."

It met the third defense, the 90-day option after default, by pointing out that the clause relied on dealt in terms not with a live, but a lapsed, policy, giving the insured 3 months to choose in which of two forms to receive its lapsed value. It pointed out, too, that by the judgment the beneficiary had been awarded the option most favorable to her.

Submitted upon jury waiver, and on a record consisting of a stipulation, documentary evidence, and the undisputed testimony of a single witness, there were findings and judgment for defendant. Plaintiff, appellant, is here insisting that the legal effect of the undisputed facts required findings and judgment for her.

Because the facts are few and undisputed, they, the points appellant makes, and our conclusions on them, may be briefly put. On May 9, 1930, an annual

premium of $360.45 and interest of $165.54 on a loan of $2,759.07 came due on the policy, which had been in force since May 9, 1919. On June 11, 1930, upon payment made and conditions named in a written agreement for extension, insured was given until October 9, 1930, to pay the May 9 premium. For an additional payment on October 9 the time for premium payment was extended, again by written agreement, to November 9. The premium not having been paid on the last extension date, the deceased, on November 17, 1930, applied in writing for a restoration of the policy, conditioned upon its "not taking effect until the premiums, if any, with interest if required, have been fully paid within my good health." On November 24 deceased applied for an additional loan of unstated amount, instructing defendant to deduct the premium due May 9, 1930.

On December 5, 1930, the insured was advised by letter that, as shown by statement inclosed, a payment of $37.45 was required to complete the pending loan. The statement showed that, assuming the payment of premium due May 9, 1930, the cash surrender value was $3,330, and the loan value was that sum, less any indebtedness on it, with interest to the premium anniversary date, an amount $37.45 short of the needed sum.

Appellant and appellée agree to the figure $3,330 for the cash surrender value, and that, if interest is deducted in advance, the loan value will be insufficient. Their difference arises out of the fact that appellant insists that on a loan interest is not deductible until the end of the year; appellee, that it must be taken out in advance. Appellant's first point, then, turns upon whether, in determining the loan value available, the interest is or is not to be taken out in advance.

On December 11 the insured was again advised that to complete the pending loan a remittance of $37.45 was required. On December 26 his attention was called by letter to the letters of December 5 and 11, and he was asked if the pending loan was to be completed. None of these letters were answered. Nothing was done to complete the loan. On January 2, 1931, the insured died.

It is appellant's second point that the extensions to October 9 and November 9, the November agreement to restore, the receipt of application for loan, and the December letters of inquiry, effected a waiver of, or estoppel to claim, lapse for nonpayment of premium.

These are the controlling policy provisions, applicable to appellant's first and second contentions.

As to Loans. At the head of the table of Loan and Cash Surrender Values is the following:

"Loan and Cash Value.

"The loan value is the cash value, less interest to the premium anniversary date."

At the left of the table this appears: "The loan obtainable at the end of any given year may be secured during that year, if the premium for the entire year has been paid."

Below the table, under the caption "Provisions relating to Loans and Surrender Value," appears:

"Loans. At any time while this policy is in force after three full years premiums from the original registered date have been paid, the Society will advance on proper assignment and delivery of this policy, and on the sole security hereof, a sum which, with interest, shall not exceed the cash value at the end of the then current policy year, as stated in the above table, less any indebtedness to the Society hereon, provided all premiums or instalments of the same have been fully paid. Interest shall be at the rate of 6% per annum and shall be payable on the premium anniversary date of this policy.

"Failure to repay such loan or to pay interest thereon shall not avoid this policy unless the total indebtedness hereon shall equal the total loan value, nor until thirty one days after notice shall have been mailed to the insured, and to the assignee of record, if any, to the addresses last known to the Society."

A further provision of the policy is: "All advances upon the policy shall become due and payable when the total indebtedness upon the policy shall equal or exceed the loan value of the policy and of dividend additions. In that event the policy shall be cancelled without notice or upon such notice as shall be specified in the policy, and the loan value thereof shall be applied to extinguish all advances."

And still another: "The beneficiary, if the policy be not assigned, shall have the right, from time to time, without the execution of any additional agreement to apply for and receive additional advances upon

said policy until the total indebtedness thereon, with interest, shall equal the then cash surrender value thereof."

These are the option provisions of the policy on which appellant bases her third contention:

"Options on Surrender or Lapse. After three full years' premiums from the original register date have been paid hereon, upon any subsequent default in the payment of any premium or instalment thereof, and within three months after such default, this policy may be surrendered by the insured (or assignee if any) who may elect either of the following options:

"(a) To receive the cash surrender value of this policy, or

"(b) To purchase non-participating paid up life insurance payable at the same time and on the same conditions as this policy, but without double indemnity or total and permanent disability benefits.

"In the event of default in the payment of any premium or instalment thereof after this policy has been in force three full years, if the insured (or assignee if any) does not select either of said options within three months of such default, the policy shall become automatically paid up under Option (b).

"If there be any indebtedness against this policy, the cash surrender value shall be reduced thereby, and the paid up insurance shall be reduced proportionately."

The two special extension agreements each provided that, after the extended date named in it for payment of premiums, "all rights under the policy shall be the same as though this agreement and deposit had not been made, except that the time for exercising the option on surrender or lapse shall run from the extended date and not from the due date of the premium."

The District Judge found for the defendant on the issues of payment, waiver, and 3 months' option plaintiff had tendered. Agreeing with defendant as to the deduction of interest in advance, and finding the available loan value insufficient to pay the premium, he rejected plaintiff's contention that it had been paid.

As to waiver and estoppel, he found that the premium had not been paid while the insured was in good health, as required in the conditions for restoration of the policy, and that defendant had done nothing to waive or estop itself from insisting upon those conditions.

As to the option on "surrender or lapse," he found it wholly unrelated to extending the life of the policy and without effect, except to afford 90 days for choice of the form in which the lapsed value of the policy would be received.

We think the District Judge was right. It is true that the loan clause of the policy did contain a general provision as to loans, that interest on them was payable at the end of the loan period. And it is true, too, that, if the loan value had been sufficient to insure the payment of the interest, it need not have been deducted until the end of the year. When, as here, it was sought by appropriation of the entire loan value to the premium to leave the loan unsecured to the extent of $37.45, it is clear that this is in the face of the plain provisions of the policy that, loans made as they are, on the sole security of the policy, may not be made without taking into account the interest to accrue. If it were not so provided, having made an agreement for a year's loan with interest upon the sole security of the policy, the lender would find itself without security for a portion of the loan. All of the policy provisions bearing on loans negative such a result. The specific provision that the cash surrender value at the end of the year may be taken as cash at any time during the year, but that the loan value is the cash value less interest for the year, clearly and exactly forbids it.

The other contentions are equally without merit. Neither the extension agreements nor the December letters could have any effect as waiver or estoppel. The insured accepted extension agreements, special in their terms, having particular incidents and conducing to particular results. It would be a contradiction in terms to say that the insured could accept an extension under these agreements and then predicate waiver or estoppel on them contrary to their provisions. Jeffers v. Bankers' Life Co. (C.C.A.) 71 F.(2d) 603.

Whatever might be said of the December letters to the insured regarding the amount necessary to complete the loan, if they stood alone, the fact is they do not so stand. They were written pursuant to and in accordance with the agreement for restoration, conditioned upon payment of the premium, the insured being then in good health.

As to the third claim, that of the 3-month option, it is sufficient to say that in face of the fact that only two options are presented, and these definite and specific, appellant seeks to read into the clause a third option, an option for 3 months after lapse to keep the policy in force by paying the premium. Nothing in the clause refers to premium payment, or is concerned with it. The clause has nothing to do with a live policy, nothing to do with keeping it in, or restoring it to, force. It deals wholly with a lapsed policy, and with the optional forms under which such value as it has as lapsed may be received.

Unfortunate as it is that a policy has been lost for the failure to pay this small sum, the result is not attributable to any unjust or unreasonable provision in the policy, nor to any unjust or misleading act or conduct of the insurer. It is attributable to the failure of the insured, first, to pay the premium, either when due originally, or as extended, and, second, after lapse, to furnish the small amount necessary to restore its obligation.

The judgment on the main appeal is affirmed. The cross-appeal is dismissed.