### DONSING v. UNITED STATES.
### No. 7197.

Circuit Court of Appeals, Seventh Circuit.
July 2, 1940.

Rehearing Denied July 23, 1940.

616

B. J. Husting, U. S. Atty., and E. J. Koelzer, Asst. U. S. Atty., both of Milwaukee, Wis., Wm. M. Lytle, of Chicago, Ill., and Julius C. Martin, Director, Bureau of War Risk Litigation, Wilbur C. Pickett, Special Ass't. to Atty. Gen., Keith L. Seegmiller, Atty., Dept. of Justice, and Fendall Marbury, Special Atty., Dept. of Justice, all of Washington, D. C., for appellant.

Ernst von Briesen and Ralph von Briesen, both of Milwaukee, Wis., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

Caroline Donsing, on November 20, 1917, enlisted in the military service of the United States and thereafter served in the army nurse corps until May 26, 1919, when she was honorably discharged. She subscribed for a $10,000 insurance policy, but allowed it to lapse for non-payment of premium on June 1, 1919.

On November 29, 1920, she applied for reinstatement of said insurance, and her application was "temporarily rejected." On August 19, 1923, she, or some one for her, made another application, and this application was denied, or to use the language of the Director of the Bureau, it "cannot be approved." Shortly thereafter, and on November 1, 1923, the Board reversed its action, and the Director of the Veterans' Bureau wrote the guardian of the veteran:

"In connection with the disability of your ward, the above mentioned discharged nurse, you are advised that in accordance with the provisions of the recent amendment to the War Risk Insurance Act, insurance which lapsed for nonpayment of premium due June 1, 1919, is now revived.

"All premiums due with interest from date of lapse to date of permanent and total disability, have been deducted from the principal amount of the insurance, and an award has today been submitted in your favor as legal guardian entitling you to payments of insurance benefits on behalf of your ward at the rate of $55.32 a month from April 7th, 1923.

"Initial check on this award will be mailed as soon as possible."

This was followed on November 10 by this communication from the Board to the said guardian:

"It has been found that the present disability of your ward is total, and founded upon conditions which render it reasonably certain that it will so continue throughout his life. You are awarded $55.32 dollars per month from the 7 day of Apr. 1923, during the time that you are legally vested with responsibility or care of said person. * * *

"Your check will be mailed to you as promptly as possible. * * *"

Thereafter monthly payments of $55.32 were made by defendant to the veteran until her death on September 20, 1929. Thereafter monthly payments were made to her father, the beneficiary named in her policy. These were continued until his death, February 28, 1935.

The Bureau then advised that an administrator of the father's estate must be appointed and payments to him would be continued. At this time there was unpaid on said policy, the sum of $4,691. Upon the presentation of the letters of administration defendant refused to make further payments. It took the position that all previous payments were illegal, should never have been made, and no further payments would be made.

Defendant's position was based on the assumption that the Bureau, in "reviving" the policy, acted beyond its power and authority. The payments made to the veteran and to her father were therefore gratuities —unauthorized and illegal.

In other words, it was only upon compliance with the terms of the statute that

a policy could be revived or reinstated, and the undisputed facts in this case made compliance with these terms impossible. The impossibility of compliance was due to the fact that the veteran was at the time of revival totally and permanently disabled.

Plaintiff, on the other hand, argues that there were two pending applications for reinstatement; that much informality attends the making of, and the hearings on, such applications; that the Bureau frequently reconsiders its decision and when added or more satisfactory proof is adduced it changes its rulings to meet the new and better disclosed condition of the veteran. It contends that the first and second applications must be considered together, neither of which was finally rejected; that the ruling of the Board turned on the state of the fact proof and the state of the law, there having been an amendment to the statute between the date of the original application and the final ruling of the defendant.

Plaintiff insists her application was for reinstatement; that the distinction made by defendant between revival and reinstatement is a refined one quite beyond her comprehension. In any case the Bureau's action was on veteran's applications for *reinstatement*. It was granted by a body charged with the duty of inquiring into, and making fact findings, upon which its orders are based. The findings here were favorable to the insured. She was, therefore, properly reinstated.

It is further argued by plaintiff that after the Board revived plaintiff's insurance the policy immediately became incontestable.

The District Court found as part of its findings of fact:

"5. That the said Caroline Donsing made application for the reinstatement of the policy of war risk insurance on or about the 29th day of November, 1920, and on or about the 19th day of August, 1923.

"6. That the policy of war risk insurance was in fact and in contemplation of law reinstated on or about November 1, 1923."

In a brief memorandum accompanying the findings, Judge Briggle observed:

"Regardless of whether defendant's pleading shall be deemed to be an admission of the allegation of reinstatement of the policy in question, my conclusion is that such policy was both in fact and in contemplation of law reinstated on or about November 1, 1923."

We agree with the findings and the conclusions of the District Court.

Much weight attaches to the presumption of validity and regularity of an order made by a duly appointed administrative officer more than seventeen years ago. For in that period the insured has died; the beneficiary has died; the death or disappearance of officials who passed on assured's application has occurred. Memories and recollections of occurrences have faded and possibly disappeared.

Defendant accepts as a basic fact assumption the total and permanent disability of the insured. It also assumes that the afflictions from which the insured suffered were not of war service origin. We can, without straining our imagination or stretching the recorded facts unduly, readily see how both assumptions are erroneous. The fact that a discharge shows a veteran was free from disabilities in 1919 may well have been made and in the utmost good faith, and yet, the veteran was at the time suffering from nervousness and a mental disturbance which did not then appear, yet later manifested itself in a complete collapse, followed by a finding by the Bureau of total and permanent disability. Likewise, the total and permanent disability may not have existed at the time of the original application for reinstatement, nor even at the date of the second application for reinstatement. The Director of the Bureau might well have concluded that its previous ruling was erroneous, and in the light of information which it obtained either by personal examination or verbal report, a change in its findings was necessary. In other words, it might well have found that the veteran was afflicted with a nervous and a mental disability which had its origin in war service; that such disability was imperceptible at first, but grew constantly worse until the case was hopeless—until an extreme case of complete total and permanent disability was disclosed.

The decree is affirmed.