## JAMES v. UNITED STATES.
### No. 6126.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 10, 1950.

Decided Nov. 8, 1950.

William I. Ward, Jr., Statesville, N. C., for appellant.

Thomas E. Walsh, Attorney, Department of Justice, Washington, D. C. (Thomas A. Uzzell, Jr., U. S. Atty., Asheville, N. C., James B. Craven, Jr., Asst. U. S. Atty., Morganton, N. C., H. G. Morison, Asst. Atty. Gen., and D. Vance Swann, Attorney, Department of Justice, Washington, D. C., on brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and TIMMERMAN, District Judge.

DOBIE, Circuit Judge.

This action was brought against the United States under 38 U.S.C.A. §§ 445, 817, to recover on a $10,000. policy of National Service Life Insurance. A motion for summary judgment for the United States was not ruled upon, and the case was tried on the merits before the United States District Court for the Western District of North Carolina, sitting without a jury. Judgment was entered for the United States 89 F.Supp. 330, and the plaintiff brought this appeal.

The issue here is the validity of an alleged contract of insurance held by Clara Fine James who was, at her death, the wife of plaintiff. This insured had served as a Wave in the United States Navy prior to May 24, 1946, on which date she was honorably discharged by reason of her

pregnancy. While on active duty in the Navy, insured held an admittedly valid $10,000 policy of term insurance of which the beneficiary was someone other than plaintiff. Premiums were paid by allotment, and this policy lapsed on July 1, 1946, for nonpayment of the premium first due after insured's discharge.

At some time between this lapse and June 10, 1947, insured married the plaintiff. On June 10, 1947, insured applied for reinstatement of the lapsed policy and at that time she designated plaintiff as the new beneficiary.

The application for reinstatement contained the following questions:

"1. Are you in as good health as you were on the date of the first premium in default? (Answer 'yes' or 'no'.)

"2. Have you been ill, or suffered or contracted any disease, injury, or infirmity, or been prevented by reason of ill health from attending your usual occupation, or consulted a physician, surgeon, or other practitioner for medical advice or treatment at home, hospital, or elsewhere, in regard to your health, since lapse of this insurance? (Answer 'yes' or 'no'. If 'yes' give ...... particulars ......)".

To question 1, insured answered "yes"; to question 2 no answer was given. With the exception of the answers to these two questions, it is undisputed that the procedures of applying for reinstatement of the insurance policy were complied with, fully, truthfully and correctly.

However, insured's condition on the date of application for reinstatement was very poor as compared with her health when the first premium was in default. Although her pregnancy resulted in a still birth on June 13, 1946, two weeks before default, no serious trouble was found. And another medical examination on November 9, 1946, four months after default, revealed no unusual circumstances or conditions. By the time of the application, though, an operation had been performed upon insured, and large amounts of tissue were removed from her abdomen. This occurred on April 9, 1947, two months before application, and the trouble was diagnosed as cancer.

On June 11, 1947, just one day after her application for the reinstatement of her National Service Life Insurance, insured prompted a doctor to set forth in writing a description of the cancer from which she was suffering. This statement was sent on June 25, 1947, to the Veterans' Administration with an application for compensation for disability resulting from active service. This application for compensation was sent to the Winston-Salem, North Carolina, office of the Veterans' Administration, whereas the application for reinstatement of the insurance policy was sent to the Richmond, Virginia office. By letter dated October 2, 1947, the Administration stated that it had found insured to be 100% disabled and that it had awarded her 100% disability payment from July 7, 1947, the date upon which application for disability compensation was received. Insured died of cancer on December 18, 1947, a little more than six months after she made the application for the reinstatement of her National Service Life Insurance.

At the time of insured's death no action had been taken on this application. Insured was entitled to reinstatement as a matter of right, if she met certain requirements. She could not meet these requirements. By 38 U.S.C.A. § 802 (c)(2) reinstatement may be denied on the grounds of total disability resulting from active service. And the ultimate decision of the Veterans' Administration was to deny reinstatement for this reason.

The facts of insured's health were found by the District Court. And it is their relevancy, rather than their correctness, that is seriously disputed by plaintiff. Plaintiff argues that, in spite of these facts, he is entitled to recover for the reason that the application for reinstatement was approved either in fact or by estoppel, and that the insurance policy thereby became incontestable under 38 U.S.C.A. § 802 (w). Had the application been approved, we would agree; but it is our opinion that an approval of the application was never made.

Plaintiff's argument is predicated on alternative theories:

(1) The Veterans' Administration indicated by inter-office memoranda, by correspondence referring to the insurance policy and to plaintiff as beneficiary, and by its failure to return premiums paid, that it had in fact approved the application; or

(2) Since the Veterans' Administration acted neither to approve nor to deny the application between its submission and the death of insured, a period of six months, reinstatement occurred by operation of law as a result of this unreasonable delay, and the United States is estopped to assert insured's total disability.

■ There was no approval in fact. It is true that inter-office memoranda of the Veterans' Administration indicate that some administrative officials at times thought that insured's health would not prevent reinstatement, or that the policy had actually become reinstated. These, however, did not purport to constitute an approval of the application but merely represented tentative opinions. They are not inconsistent with a later inter-office memorandum dated April 14, 1948, stating the decision of the Disability Claims Division that insured was totally disabled on the date of application and ineligible for reinstatement, or with a letter sent to plaintiff on June 9, 1948, informing him of this decision, or with the position the United States now maintains.

■ Correspondence to insured before her death, and to plaintiff thereafter, referring to the policy, requesting information to facilitate identification of insured's account, and referring to plaintiff as beneficiary, does not indicate approval of the application. This correspondence was relative to insured's policy, whatever its status may have been, and indicated an effort to set the records in order. This seems to be a reasonable course of action in all cases save where a final decision has been made to deny the application, and it bears no logical relevance to the issue of reinstatement before such a decision has been reached. For the same reason, the fact

that the Veterans' Administration did not return premiums is not indicative of approval. Although their return would evidence a denial of the application, the converse does not follow. These premiums were held in suspense as unapplied credits to the account pending action on the application.

■ Various changes were made in the Veterans' Administration records after the final decision to deny the application; these do indicate that the status of the application had changed in the contemplation of the Veterans' Administration. Since many, if not most, of the applications received by the Veterans' Administration are granted, however, the inferences as strongly favor a change of status from "undecided" to "denied", as from "approved" to "denied".

■ Plaintiff's alternative argument, that of reinstatement by estoppel, we conceive to be the major issue of this case. Even if we assume for the moment that the application was properly made and that the Veterans' Administration's delay was unreasonable, still the United States is not estopped to assert the total disability of the insured. Plaintiff's statement is generally true as to private life insurance companies that unreasonable delay by an insurer in approving or rejecting an application for reinstatement of a lapsed policy operates as a waiver of the insurer's right to assert facts which otherwise would permit him to deny the application. Froehler v. N. American L. Ins. Co., 1940, 374 Ill. 17, 27 N.E.2d 833; Apostle v. Acacia Mutual L. Ins. Co., 1935, 208 N.C. 95, 179 S.E. 444; Lechler v. Montana L. Ins. Co., 1921, 48 N.D. 644, 186 N.W. 271; Rocky Mount Savings & Trust Co. v. Aetna L. Ins. Co., 1930, 199 N.C. 465, 154 S.E. 743. This general rule, however, does not apply when the United States, rather than a private company, is the insurer.

■ It is well settled that the United States is in a position different from that of private insurers and is not estopped by the laches or unauthorized acts of its agents. Federal Crop Ins. Corp. v. Merrill, 1947, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed.

10; Wilbur National Bank v. United States, 1935, 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798; United States v. Norton, 5 Cir., 1935, 77 F.2d 731; United States v. Loveland, 3 Cir., 1928, 25 F.2d 447. But plaintiff argues that since he is seeking to base estoppel or waiver on an omission to act, rather than on a positive act of a government official in excess of his authority, he should receive different treatment. He draws an artificial distinction. In United States v. Loveland, last cited, reversed on other grounds by confession of error, 278 U.S. 665, 49 S.Ct. 184, 73 L.Ed. 571, the following appears, 25 F.2d at page 448: "The question here involved is the power of servants of the United States to place liability upon it by an act of omission when they would be powerless so to do by an act of commission. The decisions holding that a servant of the government has, in the absence of statutory warrant and duty, no such power, are too firmly settled and so providently wise as to forbid our holding that, when the government broadened its field of operation to new fields, it thereby broadened the power of those it employed in such new fields to the extent of allowing them, by acts of neglect or omission, to commit the government to liability in such field which they had no power to do in other spheres of government activity."

This commends itself to our judgment. ■■ The application for reinstatement in the instant case should have been denied by reason of insured's total disability. Had the Veterans' Administration, notwithstanding, reinstated the policy by positive action, it is true that liability would have been placed upon the United States. But this follows by virtue of 38 U.S.C.A. § 802(w) which makes reinstated policies incontestable; absent this section, the United States would not be bound by such unauthorized reinstatement. And 38 U.S.C.A. § 802(w) does not have the effect of reinstating policies because of an unreasonable delay on the part of the Veterans' Administration. Thus, the cases cited by plaintiff are not in point. United States v. Patryas, 1938, 303 U.S. 341, 58 S.Ct. 551, 82 L.Ed. 883; Continental Ill. National

Bank v. United States, 7 Cir., 1945, 153 F.2d 490; Donsing v. United States, 7 Cir., 1940, 113 F.2d 615. Each of these cases presupposes a contract of insurance and turns on the issue of incontestability. And, in relying on these cases, plaintiff assumes the very point he is trying to prove. Standard Oil Co. of New Jersey v. United States, 1925, 267 U.S. 76, 45 S.Ct. 211, 69 L.Ed. 519, is not applicable; it merely holds that the United States is liable for interest on a judgment entered against it on a war risk policy. Lynch v. United States, 1934, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434, does not help plaintiff here; it merely says that United States insurance policies create in the insured property rights protected by the Fifth Amendment.

■ For another reason, insured's policy was not reinstated by estoppel. Waiver or estoppel will not operate to reinstate a policy unless the insured has performed the necessary conditions precedent and has perfected his application. Willingham v. Equitable L. Assurance Soc. of the United States, 5 Cir., 1936, 86 F.2d 72; Broughton v. Equitable L. Assur. Soc. of United States, 5 Cir., 1934, 71 F.2d 821. Here the insured failed to give evidence of insurability as required by the regulations.

■ The National Service Life Insurance Act, 38 U.S.C.A. § 808, gives the Veterans' Administrator broad authority in the administration of the Act. Pursuant to this authority, it has been provided, Code of Federal Regulations, 1946 Supp., Title 38, Sec. 10.3422, that National Service Life Insurance " * * * may be reinstated by written application * * * accompanied by evidence of insurability * *." Sec. 10.3423(a) provides that National Service Life Insurance may be reinstated " * * * provided the applicant be in as good health on the date of application * * * as he was on the due date of the premium in default and furnish evidence thereof satisfactory to the Administrator." Sec. 10.3424 provides that "(the) applicant for reinstatement * * * must furnish evidence of insurability at the time of application satisfactory to the Administrator * * *." and that "(applicant's)

own statement of comparative health may be accepted as proof of insurability for the purpose of reinstatement under Sec. 10.3423(a) * * *."

Although by Sec. 10.3424 the Veterans' Administration "may" accept insured's incorrect answer to question 1 of the application as proof that she was in as good health on the date of application as on the date of default, it is evident that this statement of comparative health was not accepted. Furthermore, question 2 of the application intended to elicit details of illness—was left unanswered; therefore evidence of insurability as required by Secs. 10.3422 and 10.3424 is completely lacking. It is our opinion that insured, by reason of her failure to give evidence of insurability as required by these regulations, did not perfect her application.

■ For a third reason there was no reinstatement by estoppel. The Veterans' Administration, under the circumstances, did not delay for an unreasonable length of time. We shall assume as true that six months will normally constitute an unreasonable delay where a private insurance company is concerned. However, it is generally known that the Administration does not handle its business with the dispatch of a private insurer. And at the time of insured's application it was confronted with an enormous volume of work connected with its program of decentralizing records. Also, the Administration was receiving large numbers of unidentified remittances; and in this connection it should be observed that some of the insured's remittances did not sufficiently identify her account, necessitating requests by the Administration for further information. These requests are a part of the same correspondence on which plaintiff bases his claim that the policy had in fact been reinstated. Also, insured's failure to give the required evidence of insurability in all probability contributed to the delay. We will not hear plaintiff's assertion of an unreasonable delay for which the insured was responsible to a significant degree.

Since reinstatement did not occur prior to insured's death, the Veteran's Adminis-

tration properly denied reinstatement of her insurance policy on the basis of its finding that insured was totally disabled. The judgment of the District Court is affirmed.

Affirmed.