**Harry V. BROWN, Jr., for Harry V. Brown, Sr., Plaintiff,**

**v.**

**Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 72–845.**

United States District Court,
W. D. Pennsylvania.

May 27, 1975.

Merle H. Hildebrand, New Castle, Pa., for plaintiff.

James A. Villanova, Asst. U.S. Atty., Pittsburgh, Pa., for defendant.

## OPINION and ORDER

McCUNE, District Judge.

Defendant's motion for summary judgment requires that we determine whether the Social Security Administration, an administrative agency of the United States Government, can be estopped to deny payment of benefits, when payment would work a result inconsistent with the substantive provisions of the Social Security Act. At issue is the liability of the Administration for the cost of in-patient hospital services furnished to plaintiff's father by the Jameson Memorial Hospital from January 13, 1970, until his death on April 26, 1970.

\ *I*

### Background

Plaintiff, a son of the deceased, initiated this action pursuant to §§ 1869(b) and 205(g) of the Act, 42 U.S.C. §§ 1395ff(b)(1)(C) and 405(g) to seek review of the final decision of the Secretary of Health, Education and Welfare (the Secretary) denying his claim for health insurance benefits under § 1812(a)(1) of the Act's "medicare" provisions, 42 U.S.C. § 1395d(a)(1). As initially presented, plaintiff contended that his father had commenced a new "spell of illness" under § 1861(a)(1) of the Act, 42 U.S.C. § 1395x(a)(1) upon his admission to the hospital on January 13, 1970, and was, therefore, entitled to benefits under the Act.

In our opinion of December 5, 1973, we rejected that argument and held that plaintiff was not entitled to the contested benefits under the substantive provisions of the Act. At that time, however, we denied defendant's motion for summary judgment and remanded the case to the Secretary for consideration of the estoppel question which had been raised at the first argument and which is now before us, plaintiff having appealed from the Secretary's additional findings.[1]

Plaintiff contends that under the facts presented here defendant should be estopped to deny payment of the contested benefits. We will summarize the

1. At the time of the remand order the case was closed. It was reopened by order of December 3, 1974, at the request of the parties pursuant to 42 U.S.C. § 405(g) which provides, *inter alia:*

"The Court . . . may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision."

facts upon which plaintiff's claim is based.

From April, 1968, until his death, plaintiff's father was continuously institutionalized in either a nursing home or a hospital. Plaintiff claims that throughout this prolonged period of institutional care, he and members of his family were led to believe that they would be notified of the status of deceased's health insurance benefits by the Administration. This belief was founded upon a statement contained in a pamphlet prepared and distributed by the Commissioner of Social Security entitled "Your Medicare Handbook." On page 7 of that pamphlet it states:

"Hospital Insurance–Part A of Medicare

You Get a Personal Record of Benefits Used.

You don't have to bother about trying to keep track of how many 'days' or 'visits' you use in each period. The notice you receive from the Social Security Administration after you have used any hospital insurance benefits will tell you how many benefit 'days' and 'visits' you have left in that benefit period." [2]

While the deceased had used his hospital benefits on several occasions after April 7, 1968, the Adminstration did not send any notice to the plaintiff or any member of his family concerning the status of deceased's benefits from April 7, 1968, until March 6, 1970,[3] almost two months after deceased was readmitted to the hospital, despite the fact his benefits had been exhausted prior to January 13, 1970. Plaintiff claims that this failure to give the notices as described in the medicare handbook lulled him into a false sense of security. Therefore, plaintiff argues that the Secretary should be estopped to deny payment of the contested benefits.

At a hearing conducted before an Administrative Law Judge, Don Brown, plaintiff's brother testified:

"[I] absolutely had no knowledge that his benefit period was used up and to the best of my knowledge there was no notification on the part of the Social Security Administration that his benefits had been used to the extent where he had overdrawn [4] and used his benefits and also to the point where (benefits for) the last stay in the hospital were denied because of the government's contention that he had used up all his benefits periods . . . . I am sure it would have changed things had we been notified that we were incurring a debt of this magnitude through the hospital . . . . I am sure had we known this size of a bill was going to be run up, that we would have examined to see if there was private individuals who had homes that, who would have rendered the kind of service that we had intended him to get at Golden Hill (nursing home) through private sources at a much less [sic] economical rate and also it would have been in a position to extend his benefit period." Tr. 44–46.

Finding that the Secretary in denying benefits had not considered the estoppel question we remanded the case for factual determinations as to whether the

---

2. Under the medicare provisions of the Act, one eligible for medicare benefits is entitled to 90 days of hospital care during each benefit period, 42 U.S.C. § 1395d(a)(1). Thereafter, any period of 60 consecutive days during which the benefits recipient is neither in a hospital nor any other facility mainly providing skilled nursing care begins a new spell of illness and entitles the benefits recipient to full benefits under another "spell of illness." See 42 U.S.C. § 1395x(a)(1) and (2).

3. The failure of the Administration to give notice to plaintiff concerning the status of deceased's benefits was caused by a delay in processing of the bills. See Tr. 103–104.

4. The Administration claims that deceased had overdrawn his period of coverage by 49 days and, therefore, sought reimbursement for all days for which coverage had been granted in excess of 150 days of coverage which was the maximum coverage under the statutory scheme. See Tr. 3, 8.

factual prerequisites for an estoppel claim were present without deciding whether, as a matter of law, estoppel could be invoked against the Secretary. Our remand order directed the Secretary to address four questions: (1) whether under the statute and related administrative regulations the Commissioner of Social Security had the authority to make the statement found on page 7 of the pamphlet "Your Medicare Handbook" concerning notice of the number of days remaining in a given benefit period; (2) whether the issuance of such a notice was required or provided for by any Social Security Administration practice, regulation or ruling; (3) whether such a notice was ever given to deceased, his son or any other person; and (4) if such notice was not given, whether plaintiff relied to his detriment on the government's failure to give such notice.

Pursuant to our order, the Secretary, acting through the Appeals Council, answered those questions as follows:

(1) The authority to issue the pamphlet "Your Medicare Handbook" derives from and is implicit in the responsibility for the administration of the Social Security program. The program depends on informed participation by the public. Therefore it is necessary as Congress has repeatedly recognized through budgetary appropriations for the Commissioner to publish informational materials that seek to advise the public in non-technical language of the practice and procedure of the agency and the statutory requirements of the Act;

(2) The pamphlet accurately described the Administration's normal method of operation;

(3) That not less than four notices should have been sent between September, 1968 and January, 1970. The notices were not sent because the notice called for depended upon the act of

bill processing which was not done until November 1, 1972. No notice that benefits had been exhausted was received until March 6, 1970.

(4) The Appeals Council does not dispute that plaintiff may have relied on the statement to his detriment. See Tr. 84–88.

On remand, the Appeals Council decided that plaintiff was not entitled to the contested benefits for two reasons. First, the Council held that as a matter of law the Secretary could not be estopped. Furthermore, the Council concluded that as a matter of fact, plaintiff had not displayed reasonable diligence and circumspection in response to the suspicious circumstances created by the complete absence of the promised notices.[5]

Plaintiff has filed exceptions to the additional and modified findings of fact by the Appeals Council which we now address in the context of defendant's motion for summary judgment.

■ In reviewing an administrative determination, the court is generally limited to consideration of two questions: (1) whether the decision is the product of an error of law and (2) whether it is supported by substantial evidence. The facts are not in dispute. We must address a purely legal issue, i. e., whether estoppel is available against the government and a question of fact, i. e., do the facts presented here show justifiable reliance?

■ After a thorough review of the administrative record, the briefs of both parties and the points raised at oral argument, we conclude that the Secretary cannot be estopped as a matter of law. We further find that there is substantial evidence to support the decision of the Appeals Council. On the factual issue, therefore, it is proper to grant defendant's motion for summary judgment.

5. Finding of Fact No. 5. "The reliance of the claimant and the decedent on the lack of notice pertaining to the decedent's remaining benefit days was not reasonable or innocent. Therefore the factual prerequisites for a claim of estoppel are not met." Tr. 88.

## II

### Estoppel: The Applicable Law

It is sometimes stated as a general rule that "estoppel may not be asserted against an agency of the United States. government," see e. g., Spencer v. Railroad Retirement Board, 166 F.2d 342, 343 (3rd Cir. 1948), *Cf.* Walsonavich v. United States, 335 F.2d 96, 100–101 (3rd Cir. 1964). However, it is clear that this general rule does not apply in all cases. For example, in Ritter v. United States, 28 F.2d 265, 267 (3rd Cir. 1928) the court said:

"The acts or omissions of the officers of the government, if they be authorized to bind the United States in a particular transaction, will work estoppel against the government, if the officers have acted within the scope of their authority."

While in *Ritter*, the court found that the government was not estopped because a field agent of the Internal Revenue Service acted in an unauthorized manner in telling plaintiff that he need not observe the requirements of a tax refund claim statute, in Walsonavich v. United States, *supra*, the same court held that the government was estopped from claiming that the statute of limitations applicable to excise taxes preluded a refund claim which was made within the time period specifically agreed to by the Commissioner of Internal Revenue. See also Atlantic Richfield Company v. Hickel, 432 F.2d 587 (10th Cir. 1970) and Smale & Robinson, Inc. v. United States, 123 F.Supp. 457, 467 (S.D.Calif.1954).

Other cases have held that the government may also be bound by the doctrine of equitable estoppel if the government is acting in its proprietary rather than its sovereign capacity. See, e. g., United States v. Georgia-Pacific Co., 421 F.2d 92, 101 (9th Cir. 1970); United States v. County of Lawrence, 173 F.Supp. 307, 314 (W.D.Pa.1959), rev'd o. g. 280 F.2d 462 (3rd Cir. 1960), aff'd 364 U.S. 628, 81 S.Ct. 357, 5 L.Ed.2d 363 (1961).

Plaintiff, relying on the finding that the Commissioner was acting within the scope of his authority when he issued the pamphlet entitled "Your Medicare Handbook," contends that this finding should estop the defendant from denying the contested benefits. Furthermore, plaintiff argues that the government was acting in a proprietary capacity and is, therefore, bound by the doctrine of equitable estoppel. We do not find either argument persuasive.

It is established that

"[T]he United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." (Citations omitted).

Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917); *Cf.* Federal Crop Insurance Corp. v. Merrill, 332 U. S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). As explained in Smale & Robinson, Inc. v. United States, *supra,*

"Public policy demands that the mandate of the law should override any doctrine of estoppel. And no amount of misrepresentation can prevent a party, whether citizen or Government, from asserting as illegal that which the law declares to be such. (Citations omitted).

"Thus it is held that misrepresentations by a government agent can never operate to have the effect of making legal that which the law declares to be illegal." (Citations omitted). 123 F.Supp., at 464.

In Terrell v. Finch, 302 F.Supp. 1063 (S.D.Tex.1969) a local employee of the Social Security Administration incorrectly told plaintiff that her remarriage would not affect her social security benefits. Relying on that statement the plaintiff remarried. The court held that the Administration was not estopped to deny benefits for two reasons: (1) the

employee in making the respresentation was not acting within the scope of his authority and the government was therefore not bound by those representations, and (2) because

"Plaintiff must comply with the statutory requirements in order to have an enforceable right. The unauthorized act of a government employee cannot vary the requirements established by Congress." 302 F.Supp., at 1064.

Other courts have reached the same conclusion. See e. g., Flamm v. Ribicoff, 203 F.Supp. 507 (S.D.N.Y.1961); Taylor v. Flemming, 186 F.Supp. 280 (W.D. Ark.1960).

Plaintiff, however, argues that those cases are distinguishable from the case sub judice since here it is undisputed that the Commissioner of Social Security was authorized to issue the pamphlet containing the statement on which plaintiff relied.

This attempted distinction is defective in two respects. First, despite the Commissioner's admitted authority to issue the pamphlet, he was powerless to vary the substantive requirements of the statute. Cf. United States v. Garbutt Oil Co., 302 U.S. 528, 533–535, 58 S.Ct. 320, 82 L.Ed. 405 (1938); Cole v. Railroad Retirement Board, 289 F.2d 65, 68 (8th Cir. 1961). By operation of law, parties dealing with the government are charged with knowledge of, and are bound by, statutes and lawfully promulgated regulations, Federal Crop Insurance Corp. v. Merrill, supra, and reliance upon incorrect information received from a government agent or employee can not alter the terms of a statute regardless of the economic hardship which may result.

"Although the outcome often causes hardship, it is not a callous doctrine we uphold. 'It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury.' Federal Crop Insurance Corp. v. Merrill, 332 U.S. at 385 [68 S.Ct. 1, 92 L.Ed. 10]."

Atlantic Richfield Company v. Hickel, supra, 432 F.2d at 592.

Because application of the estoppel doctrine would work a result inconsistent with the provisions of the Act, it cannot apply. See Smale & Robinson Inc. v. United States, supra, 123 F.Supp. at 466.

Furthermore, we find that this case is clearly distinguishable from Ritter v. United States, supra. Publication of the pamphlet was not in any sense "a particular transaction." On the contrary, the pamphlet was addressed to all members of the public, was purely advisory and sought only to inform the public in non-technical language of the requirements and procedures contemplated by the Act. See Note, The Proper Case for Estoppel Against Federal Administrative Agencies, 28 Notre Dame Law 234, 237–247 (1954).

The representations contained in the pamphlet on which plaintiff relied are accurate insofar as they describe the Administration's standard operating procedure. While it is undisputed that the procedure was not adhered to in this instance, the failure of the Administration to send the promised notices cannot bind the government. As stated by the court in United States v. Loveland, 25 F.2d 447, 448–449 (3rd Cir. 1928):

"The question here involved is the power of servants of the United States to place liability upon it by an act of omission when they would be powerless so to do by an act of commission. The decisions holding that a servant of the government has, in the absence of statutory warrant and duty, no such power, are too firmly settled and so providently wise as to forbid our holding that, when the government broadened its field of operation to new fields, it thereby broadened the power of those it employed in such new fields to the extent of allowing them, by acts of neglect or omission, to commit the government to liabilities in such field which they had

no power to do in other spheres of government activity."

*Cf.* James v. United States, 185 F.2d 115 (4th Cir. 1950). Because administrative agencies are bound by the statutes under which they operate, even an affirmative misrepresentation to plaintiff, could not estop the defendant. For example, even if the Secretary or his representative affirmatively misrepresented to plaintiff that deceased's stay in a nursing home would qualify him for a new spell of illness (and therefore a new benefits period), the government would not be estopped. The Administration's failure to send notices of the number of days remaining in a benefits period, an act of omission, does not justify use of estoppel against the government.

■■ The contention that the government is estopped because it was acting in a proprietary rather than a sovereign capacity is also without merit. Plaintiff argues that

"When deductions are made and premiums paid by Mr. Brown over the years to the Social Security Administration, a contract arose between the Administration and Mr. Brown so that when the condition subsequent happened, whether disability, illness or death, the liability of the Administration was fixed and Mr. Brown was entitled to payment of benefits under the contract since the government in such circumstances stood in the same position as a private citizen." (Plaintiff's Supplemental Brief, p. 4.)

In the first place, the Social Security Act does not create a contractual relationship between wage-earners and the government. Benefits are not based on earnings and the wage-earner has no choice, i. e., he is required to participate by operation of law. Secondly, we do not believe that when, as here, the government's authority is wholly statutory that the distinction between the government acting in a proprietary capacity as opposed to a sovereign capacity is applicable. *Cf.* Federal Crop Insurance Corp. v. Merrill, *supra.* In any event, we be-

lieve that it is clear that the government was acting in its sovereign capacity since in administering the Social Security program it was conducting a unique government function on a non-profit basis designed to benefit the general public.

### III

*Estoppel: The Factual Prerequisites*

■ Even allowing the possibility of estoppel against the government, plaintiff must establish each element by unambiguous facts since an estoppel will not issue from facts which are ambiguous and subject to more than one construction. 28 Am.Jur.2d § 35. See Knapp-Monarch Co. v. Commissioner of Internal Revenue, 139 F.2d 863 (8th Cir. 1944).

■ An estoppel arises where one party by words or action makes a false representation of fact and the other party reasonably relies on that representation and is prejudiced thereby. It is established that the Administration represented that it would notify benefits recipients of the number of days remaining in any given benefits period and that it failed to do so in this case. Defendant also concedes that plaintiff, relying on that representation, pursued a course he would not otherwise have followed. It is also clear that plaintiff will be "prejudiced" if held responsible for the hospital bill. However, mere detrimental reliance is insufficient to support a claim of estoppel. That reliance must have been reasonable.

"One who claims the benefits of an estoppel on the ground that he has been misled by the misrepresentations of another must not have been misled by his own lack of reasonable care and circumspection. A lack of diligence by a party claiming an estoppel is generally fatal. If the party conducts himself with careless indifference to the means of information reasonably at hand or ignores highly suspicious circumstance, he may not invoke the doctrine of estoppel." 28 Am.Jur.2d §§ 79–80.

192

The Appeals Council, "notwithstanding its recognition of the role played by the Social Security Administration in the development of this regrettable situation" Tr. 86, found that the reliance was not justified. In essence, admitting the negligence of the Administration, the Appeals Council felt that plaintiff was equally blameworthy, i. e., "contributorily negligent" by failing to inquire into the status of deceased's benefits when no notices whatsoever were received after April 7, 1968. We agree.

In its decision denying benefits on remand the Appeals Council states:

"[I]t is vitally important to note that this statement (on page 7 of Your Medicare Handbook) does not merely inform the beneficiary that he need not bother counting days, rather, it goes on to explain that he need not bother because he will be provided with notices to keep him properly abreast of his eligibility situation

. . .

"The record shows, in fact, that the Social Security Administration sent no notices concerning his remaining benefit days for more than a year prior to Jan. 13, 1970, during which the decedent was hospitalized on four separate occasions. A suspicious situation had thereby arisen: the decedent and his family were not receiving the notices which they had been advised to rely upon by the medicare handbook. The claimant has not alleged that he ever sought clarifying information from the local Social Security office, a course readily at hand and the record does not reflect any such request for information." (Tr. 86).

We believe that the finding of the Appeals Council is supported by substantial evidence and is therefore conclusive.

### IV

### Conclusion

For the above given reasons, we hereby grant defendant's motion for summary judgment.

It is so ordered.